Mildred A. JOHNSON, Plaintiff–Appellee, Cross–Appellant,

v.

HONEYWELL INFORMATION SYSTEMS, INC., Defendant–Appellant, Cross–Appellee.

Nos. 90–2139, 90–2205.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 29, 1991.

Decided Jan. 30, 1992.

Rehearing Denied March 9, 1992.

Charles Gottlieb (briefed), Thomas R. Eckhardt (argued), Josef A. Conrad, Gottlieb & Goren, Southfield, Mich., for plaintiff-appellee, cross-appellant.

Richard J. Seryak (argued and briefed), Gillian Steinhauer, George D. Mesritz, Miller, Canfield, Paddock & Stone, Detroit, Mich., Stephen S. Lewenberg, Bull HN Information Systems, Inc., Billerica, Mass., defendant-appellant, cross-appellee.

Before RYAN and BOGGS, Circuit Judges, and GODBOLD, Senior Circuit Judge.[*]

RYAN, Circuit Judge.

Honeywell Information Systems, Inc. appeals a jury verdict in favor of Mildred Johnson on a wrongful discharge claim. Johnson cross-appeals a directed verdict in favor of Honeywell on her claim that the discharge was in retaliation for her opposition to alleged violations of Michigan's Elliott–Larsen Civil Rights Act, Mich.Comp. Laws §§ 37.2101 to 37.2804.

The principal issue in this diversity action is whether, under Michigan law, an employer may rely upon an employee's false representations made at the time of employment, of which the employer was unaware, and which were not the grounds for the

---

[*] The Honorable John C. Godbold, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

employee's discharge, as a just cause defense to the employee's wrongful discharge and state civil rights claims. We hold that, in the circumstances presented in this case, it may.

For the reasons set forth below, we reverse the district court's denial of Honeywell's motion for summary judgment on the wrongful discharge claim and affirm the directed verdict granted in favor of Honeywell on the Elliott–Larsen claim.

## I.

Mildred Johnson was employed by Honeywell as a field relations manager between November 1976 and November 1984. In this position, Johnson was responsible for providing assistance to Honeywell's branch managers in establishing affirmative action programs, responding to Equal Employment Opportunity Commission charges, hirings, and other employment matters. Performance reviews of Johnson's work were generally positive until about the middle of 1983. Beginning in July 1983, Johnson's supervisors and several of her "clients," i.e., managers within Honeywell, began to complain to Johnson about her unavailability by phone, lack of cooperation, and ineffectiveness. Some later performance reviews noted improvement while others perceived little change in Johnson's performance and noted that Johnson was inflexible and lacked employee relations knowledge.

Honeywell discharged Johnson on November 2, 1984, after she declined the company's request that she voluntarily resign. Honeywell contends that Johnson's performance was unsatisfactory and that she refused to improve her availability, flexibility, or knowledge. Specifically, the company cited Johnson's refusal to follow the reasonable directions of a supervisor as the cause for her dismissal.

Johnson admitted that she did not change her work habits in response to criticisms. She maintains that at all times her work was satisfactory and that no changes were necessary. According to Johnson, the motivating factor in the decision to fire her was not poor job performance as stated by

Honeywell, but her conflicts with certain branch managers at Honeywell, particularly Bob Schramm, a regional manager for marketing and one of Johnson's main clients. The conflict with Schramm and the other managers involved affirmative action goals and the resistance of Schramm and the others to Johnson's efforts to meet those goals. Nearly a year prior to her dismissal, Johnson complained in a memorandum sent to her supervisors Michael Gavigan and George Whelan of "discrimination" against her as a result of her confrontations with Schramm over affirmative action. Johnson alleges that Schramm and others sought to "shut [her] out" of important meetings and other opportunities and that they unfairly criticized her in an attempt to coerce her into dropping her insistence on meeting affirmative action goals. One of Johnson's supervisors, Christine Kramer, investigated Johnson's complaint and found it to be without merit.

Johnson filed this action in state court, alleging that Honeywell's retaliatory termination of her employment breached a just cause employment contract and violated Michigan's Elliott–Larsen Civil Rights Act. The case was removed to federal court on motion by defendant.

During discovery, Honeywell learned that Johnson had falsified her employment application in several respects. The application signed by Johnson in November 1976 stated: "I understand ... that the submission of any false information in connection with my application for employment, whether on this document or not, may be cause for immediate discharge at any time thereafter should I be employed by Honeywell."

Johnson's most glaring misrepresentations involved her education. While she claimed in her employment application to have earned a Bachelor of Arts degree from the University of Detroit, Johnson actually completed only four courses at the university and audited two others. The newspaper advertisement to which Johnson replied specifically called for applicants with a college degree and significant work experience: "The successful candidate will

possess a college degree and have a minimum of 4 to 6 years combined personnel and industrial employee relations experience." Johnson similarly submitted false information regarding the nature and extent of her studies at Wayne State University, stating that she had studied Applied Management for one year. Wayne State had no record of her enrollment. Johnson also exaggerated some prior job descriptions and falsely claimed to have been managing some of her properties in the year between her prior job and her hiring at Honeywell. In fact, she owned no such properties, and during the interim she had been unemployed and looking for work.

Honeywell moved for summary judgment on the breach of contract claim, arguing that the misrepresentations in Johnson's employment application provided a complete defense to liability for wrongful discharge under theories of just cause and fraudulent misrepresentation. First, it argued that the misrepresentations provided the company with just cause for dismissing Johnson even though it did not know of the falsifications at the time of her discharge. Second, Honeywell argued that Johnson's fraudulent misrepresentations on the employment application barred formation of a just cause contract.

The district court rejected the just cause argument, holding that, under Michigan law, evidence of misconduct discovered after the termination of employment could not serve as the basis of a just cause defense. It also held that there remained disputed questions of fact as to the materiality of Johnson's misrepresentations and Honeywell's reliance upon them, thereby precluding summary judgment on the fraudulent misrepresentation theory. Honeywell argued that the misrepresentations barred relief on the Elliott–Larsen civil rights claim as well, but the district court never addressed that issue.

Honeywell later moved for a directed verdict on both claims. The district court granted a directed verdict in Honeywell's favor on the Elliott–Larsen claim, holding that Johnson had "failed to prove by a preponderance of the evidence that the legitimate reasons that the defendant ... offered for her termination were but a pretext for retaliation." Honeywell's motions for directed verdict and judgment n.o.v. on the breach of contract claim were denied.

## II.

█ The first issue we must address is whether an employer may rely upon evidence of an employee's misconduct, discovered after termination, as a defense to a wrongful discharge claim in a just cause employment contract case. Honeywell concedes the existence of a just cause contract but argues that Johnson's admittedly false statements in her employment application constitute just cause for termination as a matter of law, even though Honeywell was not aware of the statements at the time of dismissal and they could not, therefore, have been an inducing motive for the discharge.

Generally, an employer may defend a wrongful discharge claim on the basis of facts unknown at the time of discharge and, therefore, not an actual or inducing motive for the termination. *See* 56 C.J.S. *Master and Servant* § 51; 53 Am.Jur.2d, *Master and Servant* § 46; *see also Leahey v. Federal Express Corp.*, 685 F.Supp. 127, 128 (E.D.Va.1988). To the best of our knowledge, the Michigan Supreme Court has never addressed this issue and, thus, our first task as a federal court exercising diversity jurisdiction is to "divine what the Michigan high court would say if faced with the issue." *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir.1987). "Where no state supreme court precedent is applicable, '[i]n predicting how a state's highest court would rule, federal courts must follow intermediate state court decisions, policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies.'" *Id.* at 950 (quoting *Weiss v. United States*, 787 F.2d 518, 525 (10th Cir.1986)).

The district court took note of the general rule permitting employers to establish just cause for a dismissal on the basis of facts unknown at the time of discharge but

denied Honeywell's motion for summary judgment. Relying on its reading of *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), the district court determined that Michigan apparently does not follow the general rule and that Michigan law "seems to require that the employee have been discharged for the reason which the employer claims constitutes just cause. Where the employer says it was for misconduct and the employee says he was discharged for another reason, the jury must decide what the true reason was and whether that reason was good cause." Therefore, the district court held that in this case "the misrepresentations cannot constitute just cause for dismissal as a matter of law where the employer admittedly did not know of the misrepresentations until well after Plaintiff's discharge." We disagree.

The Michigan Court of Appeals recently addressed the issue of after-acquired evidence of employee misconduct in *Bradley v. Philip Morris Inc.*, Nos. 112019/112807 (Mich.Ct.App. Oct. 29, 1991) (unpublished per curiam), *application for leave to appeal filed*, No. 92791 (Mich.Sup.Ct. Nov. 19, 1991). In *Bradley*, the court remanded a wrongful discharge case for a new trial based on the trial court's exclusion of any evidence regarding plaintiff's misconduct discovered by defendant after the employment was terminated. "Evidence of employee misconduct occurring prior to termination is admissible as substantive evidence even if the former employer did not know about the misconduct until after the termination. Just cause for termination may include facts and circumstances not known to the employer." *Bradley*, slip op. at 2.

We believe the Michigan Supreme Court would hold that just cause for termination of employment may include facts unknown to an employer at the time of dismissal, though obviously such facts would be neither the actual nor inducing cause for the discharge. This result is principally grounded upon the holding of the Michigan Court of Appeals in *Bradley*, but it is also based on the general applicability of this rule, its common sense, and the dearth of Michigan case law to the contrary. This

holding does not conflict with the Michigan Supreme Court's decision in *Toussaint*. Although in *Toussaint*, the court wrote, in dicta, that the "jury is always permitted to determine the employer's true reason for discharging the employee," 408 Mich. at 622, 292 N.W.2d 880, the statement was offered as part of the court's review of the role of the jury in several specific wrongful discharge situations. We agree that in certain factual situations, ascertaining the employer's true reason for discharging the employee is essential to determining whether the dismissal was for just cause. In this case, however, Honeywell's stated reason for terminating Johnson's employment was not its only defense. On motion for summary judgment, it was also necessary for the district court to determine whether plaintiff's admitted misrepresentations to her employer in an application for employment constituted just cause for her discharge.

■ Thus, the next issue for our consideration is whether, based on the facts presented to the district court on Honeywell's motion for summary judgment, the court should have held that Johnson's misrepresentations constituted just cause for her dismissal as a matter of law. The standard of review on a refusal to grant summary judgment is abuse of discretion. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). We believe Honeywell was entitled to judgment in its favor as a matter of law and that the district court abused its discretion in denying Honeywell's motion for summary judgment.

In order to provide a defense to an employer in a wrongful discharge claim, the after-acquired evidence must establish valid and legitimate reasons for the termination of employment. As a general rule, in cases of resume fraud, summary judgment will be appropriate where the misrepresentation or omission was material, directly related to measuring a candidate for employment, and was relied upon by the employer in making the hiring decision. *See Churchman v. Pinkerton's, Inc.,* 756 F.Supp. 515, 520 (D.Kan.1991). These requirements are necessary to prevent an employer from combing a discharged employee's record for evidence of any and all misrepresentations, no matter how minor or trivial, in an effort to avoid legal responsibility for an otherwise impermissible discharge.

In this case, Honeywell established just cause as a matter of law by producing undisputed evidence establishing the materiality of Johnson's misrepresentations and Honeywell's reliance upon them. The advertisement to which Johnson responded stated that "a college degree and ... 4 to 6 years combined personnel and industrial relations experience" were required of the successful applicant. Johnson applied for employment in response to the advertisement and admittedly misrepresented her educational background. She conceded by affidavit that she did so in order to "get [her] foot in the door" at Honeywell. In another affidavit, Frederick B. Pluckhorn, an employee relations manager at Honeywell in 1976 and the person who hired Johnson, stated that he relied on her representations that she possessed a college degree, that had he known of Johnson's actual educational background he would not have hired her nor even scheduled her for an interview, and that he hired four other field relations managers at about the same time as Johnson in reliance upon their representations that they possessed a college degree.

In denying Honeywell's motion for summary judgment, the district court held that the elements of materiality and reliance had not been established as a matter of law. Contrary to the findings of the district court, however, we do not think that Johnson's prior work in human resources created a genuine issue of material fact as to whether Honeywell relied upon her misrepresentations about her education in hiring her. Neither did Johnson's assertion that she was questioned during interviews only about her work experience, rather than about her education, create a genuine issue of material fact as to Honeywell's reliance. Nor did the evidence that Gavigan, Johnson's supervisor at the time of her firing, lacked a college degree create a genuine issue of fact requiring submission to a jury. The relevant question as to Honeywell's reliance is whether the company would have hired Johnson at the time of her application for employment had it known that she did not possess a college degree. Johnson failed to present evidence sufficient to permit a reasonable juror to find that Honeywell did not rely on her misrepresentations in hiring her as a field relations manager in November 1976. Honeywell required a college diploma of applicants for Johnson's position; Johnson admittedly misrepresented her educational background in order to "get [her] foot in the door" at Honeywell; and she was hired by the company based on those misrepresentations. Reliance has been established as a matter of law. Since the evidence is that Honeywell relied upon the misrepresentations, they were material.

Given the materiality of Johnson's misrepresentations and Honeywell's reliance upon them, Honeywell has established just cause for Johnson's dismissal as a matter of law. We do not hold that any or all misrepresentations on an employment application constitute just cause for dismissal or serve as a complete defense to a wrongful discharge action. We conclude, however, that Johnson's misrepresentations, by virtue of their nature and number, and when viewed in the context of Honeywell's express requirement of a college degree and its warning to applicants that misrepresentations may constitute just cause for termination of employment, provide adequate and just cause for her dismissal as a matter of law even though they were un-

known to Honeywell at the time of her discharge. The district court's denial of defendant's motion for summary judgment on plaintiff's wrongful discharge claim is therefore reversed.

## III.

■ We next examine the district court's directed verdict in favor of Honeywell on Johnson's Elliott–Larsen claim. Our review is governed by Michigan law because Fed.R.Civ.P. 50(a) does not specify a standard for granting or denying a directed verdict; therefore, a federal district court exercising diversity jurisdiction must apply the forum state's standard for directed verdict. *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir.1986). In reviewing a trial court's ruling on a motion for directed verdict or judgment notwithstanding verdict, "the testimony and all legitimate inferences that may be drawn are viewed in the light most favorable to the plaintiff." *Feaheny v. Caldwell*, 175 Mich.App. 291, 299–300, 437 N.W.2d 358 (1989). "If ... the evidence is insufficient to establish a prima facie case against the defendant[ ], then the motion should have been granted since reasonable persons would agree that there is an essential failure of proof." *Id.* at 300, 437 N.W.2d 358.

The first issue is whether relief is available to Johnson under Michigan's Elliott–Larsen Civil Rights Act. In *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir.1988), a Title VII and Age Discrimination in Employment Act (ADEA) case, the Tenth Circuit held that while evidence acquired by an employer during discovery regarding plaintiff's 150 falsified claims during his employment as a field claims representative could not be said to constitute the actual "cause" for plaintiff's discharge, it was relevant to his claim of "injury" and precluded the grant

of any relief or remedy under the federal civil rights laws. "To argue ... that this after-acquired evidence should be ignored is utterly unrealistic." *Id.* The *Summers* court compared its case to a hypothetical wherein a company doctor is discharged because of his age, race, religion, and sex, but in defending a civil rights action, the company learns that plaintiff was not really a doctor. "In our view, the masquerading doctor would be entitled to no relief, and Summers is in no better position." *Id.*

■ Similarly, in this case, we hold that Johnson's misrepresentations as to her educational background bar her recovery under Elliott–Larsen.[1] We agree with the reasoning of the court in *Summers* and hold that on these facts, even if we assume that Honeywell discharged Johnson in retaliation for her opposition to violations of the Act, she is not entitled to relief. Because Honeywell established that it would not have hired Johnson and that it would have fired her had it become aware of her resume fraud during her employment, Johnson is entitled to no relief, even if she could prove a violation of Elliott–Larsen.

■ Moreover, the undisputed facts make it clear that Johnson's allegations fail to state a claim under Elliott–Larsen. In order to establish a prima facie case of unlawful retaliation under the "opposition clause" of the Act, the plaintiff must set forth facts showing 1) that she has opposed violations of Elliott–Larsen and 2) that the opposition or participation was a significant factor in an adverse employment decision. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989). In this case, Johnson relies upon her memorandum to her supervisor Gavigan in which she complained of the resistance of divisional managers to affirmative action goals. However, this "discrimination"

1. Elliott–Larsen forbids retaliation or discrimination against a person "because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich.Comp.Laws § 37.2701(a). It was enacted some ten years subsequent to Title VII and was intended to provide similar protections. *Booker*

*v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1311 (6th Cir.1989). Michigan courts look to Title VII in order to resolve questions under Elliott–Larsen, and section 37.2701 at issue here clearly tracks section 704(a) of Title VII, 42 U.S.C. § 2000e–3. *Booker,* 879 F.2d at 1311–12. Thus, section 37.2701 should be construed in the same manner as its federal counterpart. *Id.* at 1312.

does not amount to opposition to unlawful practices prohibited by Elliott–Larsen because affirmative action is not required under the Act. Since the complaints lodged by Johnson in the interoffice memorandum did not relate to violations of the Elliott–Larsen Act, they are not protected "opposition" activity. *See Holden v. Owens–Illinois, Inc.,* 793 F.2d 745, 746 (6th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986).

The only statements in Johnson's memorandum that could conceivably be construed as alleging unlawful practices at Honeywell are those attributed to Schramm. Johnson wrote that Schramm told her that "he didn't want any blacks again" and that he had "no interest" in hiring minorities and females. These statements demonstrate, at most, however, the alleged racial intolerance of one employee; they do not amount to allegations that Honeywell was engaging in any unlawful employment practice. *Booker,* 879 F.2d at 1313. Johnson simply failed to state a claim under the opposition clause of the Elliott–Larsen Act. "An employee does not receive special protection ... simply because the employee handles discrimination complaints or works on affirmative action matters." *Holden,* 793 F.2d at 751.

For all of these reasons, the district court's directed verdict in favor of Honeywell is affirmed.

Our disposition of these issues makes it unnecessary to address the other issues and arguments raised on appeal and cross-appeal.

### IV.

We REVERSE the district court's denial of defendant's motion for summary judgment on plaintiff's wrongful discharge claim and AFFIRM its directed verdict for defendant on the Elliott–Larsen claim. The case is REMANDED and the district court is directed to enter judgment in favor of defendant on all counts.