Patricia MILLIGAN–JENSEN,
Plaintiff–Appellee,

v.

MICHIGAN TECHNOLOGICAL
UNIVERSITY, Defendant–
Appellant.

No. 91–1894.

United States Court of Appeals,
Sixth Circuit.

Argued May 4, 1992.

Decided Sept. 17, 1992.

E. Nickolas Bridges (briefed), Timothy F. Cain, Bridges & Houghton, Negaunee, Mich., Caroline Bridges (argued), Bridges & Houghton, Negaunee, Mich., for plaintiff-appellee.

Robert M. Vercruysse (argued and briefed), Kurtis T. Wilder (briefed), Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant-appellant.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; and BERTELSMAN, Chief District Judge.*

BERTELSMAN, Chief Judge.

Appellee brought this Title VII action based on charges of sex discrimination and retaliation for filing an EEOC complaint.

---

* The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

The district court below held that appellant was liable on both counts and ordered that it pay appellee back pay. This damage award, however, was limited by the court because appellee had falsified her employment application. Appellant now appeals the judgment in appellee's favor.

The chronology of this case is rather long and detailed, so only a summary will be presented here. The district court's complete findings of fact may be found in its opinion, *Milligan–Jensen v. Michigan Technological Univ.*, 767 F.Supp. 1403, 1406–10 (W.D.Mich.1991).

Appellee, who had been in law enforcement for several years, began working as a Public Security Officer [hereinafter PSO] for appellant on November 7, 1987. She was placed on probationary status at that time. Appellee was the only female officer. During the first month of her employment, appellee was cited for a uniform code violation. On her 30–day evaluation, her immediate supervisor, Fredianelli, gave appellee mostly "marginal" ratings and made a reference to the uniform citation. A male officer who had committed the same violation did not receive such low ratings or a reference to the uniform citation on his evaluation.

Sometime during this period, appellee was reassigned badge numbers; she was assigned Badge 37 because it had always been assigned to a woman. Appellee was assigned to the "bump shift," which was described as essentially a meter maid position. The other officers worked a "swing shift," during which they patrolled the campus and responded to incidents requiring a PSO. On her 60–day evaluation, Appellee again received primarily "marginal" ratings.

On February 1, 1988, appellee met with Vitton, the Director of Employee Relations, and complained about her prior low evaluations. On February 11, 1988, appellee approached Fredianelli about being moved off the "bump shift" because a PSO was retiring and presumably a new officer would be hired. Fredianelli became angry and asked appellee why she was not happy with the job she had. The following exchange occurred:

> Fredianelli: "You're the woman, aren't you?"
>
> Appellee: (answered affirmatively)
>
> Fredianelli: "You've got the lady's job. Don't you like it?"

Fredianelli documented this comment in his file on appellee, as well as criticisms of her work. After this discussion, appellee called the EEOC. She claims that Fredianelli was aware of this call. On February 13, 1988, appellee filed a complaint with the EEOC. She also made an internal complaint to Vitton, which was investigated by her assistant.

On February 24, 1988, Fredianelli completed appellee's 90–day evaluation and recommended termination. She was fired by Fredianelli and Vitton the next day allegedly because she spent too much time in the office and did not satisfactorily complete her probation period.

In preparation for trial, appellant learned that appellee had omitted a prior DUI conviction from her employment application. The district court found that this particular omission was a material falsification. *Milligan–Jensen*, 767 F.Supp. at 1410.

The issues before this court, therefore, are whether appellee's falsification on her employment application bars any relief she may be entitled to and, if not, whether the district court properly concluded that appellant violated Title VII.

The trial court applied a mixed motive analysis and found that there was direct evidence of sex discrimination in that appellant, through Fredianelli, desired to consign appellee to the "lady's job" and also retaliated against her because of her EEOC complaint. The trial court further found that appellant had failed to prove that its decision to terminate appellee would have been the same absent the unlawful motives. Judge Hillman therefore held that the appellee was entitled to recover for wrongful termination.

He further found, however, that had appellant known that appellee had falsified her employment application she would have

been dismissed.[1] *Milligan–Jensen,* 767 F.Supp. at 1410.

Rather than barring appellee's entire claim for relief as a result of the false application, Judge Hillman exercised the equitable power of the court and reduced the amount of her recovery by 50%.

Although Judge Hillman's Solomon-like division of the baby might have much to recommend it in a matter of first impression, a later decision of this court—of which Judge Hillman did not have the benefit—precludes his approach and requires that the case be reversed with directions to enter judgment for appellant.

In *Johnson v. Honeywell Info. Sys., Inc.,* 955 F.2d 409 (6th Cir.1992), this court held that in cases where resumé fraud is discovered after discharge, "summary judgment [or judgment as a matter of law pursuant to Fed.R.Civ.P. 50] will be appropriate where the misrepresentation or omission was material, directly related to measuring a candidate for employment, and was relied upon by the employer in making the hiring decision." *Johnson,* 955 F.2d at 414.[2]

In the course of the opinion, this court observed:

> "The first issue is whether relief is available to Johnson under Michigan's Elliott–Larsen Civil Rights Act. In *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700, 708 (10th Cir.1988), a Title VII and Age Discrimination in Employment Act (ADEA) case, the Tenth Circuit held that while evidence acquired by an employer during discovery regarding plaintiff's 150 falsified claims during his employment as a field claims representative could not be said to constitute the actual 'cause' for plaintiff's discharge, it was relevant to his claim of 'injury' and precluded the grant of any relief or remedy under the federal civil rights law. 'To argue … that this after-acquired evidence should be ignored is utterly unrealistic.' *Id.* The *Summers* court compared its case to a hypothetical

wherein a company doctor is discharged because of his age, race, religion, and sex, but in defending a civil rights action, the company learns that plaintiff was not really a doctor. 'In our view, the masquerading doctor would be entitled to no relief, and Summers is in no better position.' *Id.*

> Similarly, in this case, we hold that Johnson's misrepresentations as to her educational background bar her recovery under Elliott–Larsen. We agree with the reasoning of the court in *Summers* and hold that on these facts, even if we assume that Honeywell discharged Johnson in retaliation for her opposition to violations of the Act, she is not entitled to relief. *Because Honeywell established that it would not have hired Johnson and that it would have fired her had it become aware of her resume fraud during her employment, Johnson is entitled to no relief, even if she could prove a violation of Elliott–Larsen."*

*Johnson,* 955 F.2d at 415 (emphasis added) (footnote omitted).

In *Johnson* this court adopted the approach of *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700 (10th Cir. 1988), which the trial court declined to follow. *Milligan–Jensen,* 767 F.Supp. at 1416. Indeed, the circuits are divided on this issue. *Compare Washington v. Lake County,* 969 F.2d 250 (7th Cir.1992), *with Wallace v. Dunn Constr. Co., Inc.,* 968 F.2d 1174 (11th Cir.1992).

This circuit, however, has committed itself to the *Summers* rule. The crucial difference between the trial court's approach and that applied by this court in *Johnson* is that the trial court balanced the equities, whereas *Johnson* regards the problem as one of causation. This court, in *Johnson,* adopted the view that, if the plaintiff would not have been hired, or would have been fired, if the employer had

---

**1.** The court found that mere conviction on the driving offense would not have resulted in termination. Rather, it was the *falsification* of the application that was the critical factor.

**2.** The court believes it is immaterial whether the appellee would have been terminated for the falsification itself or the underlying misrepresentation.

known of the falsification, the plaintiff suffered no legal damage by being fired.[3]

Therefore, since the trial court found as a fact that falsification of the employment application, if discovered during her employment, would have resulted in appellee's termination, it becomes irrelevant whether or not she was discriminated against, and we need not discuss the remaining issues raised in the briefs. Pursuant to *Johnson*, 955 F.2d 409, this case must be remanded to the trial court with directions to vacate the judgment for appellee and enter judgment for appellant.

Therefore, the district court's judgment for appellee is REVERSED.

**3.** In *Washington,* 969 F.2d at 254, the Seventh Circuit noted that in some cases an issue may exist whether the plaintiff would have been *fired* for the after-discovered resumé fraud even though the employer may not have *hired* a person who committed such fraud. The court pointed out that once an employer has a greater investment in an employee, it might be less likely to fire him or her. In this case, however, the trial court specifically found that plaintiff would have been fired if the fact of falsification had been known to the employer. Indeed, such finding was essential to the reduction of damages imposed by the trial court. *Milligan–Jensen,* 767 F.Supp. at 1416–17.