Ali BAZZI, Plaintiff,

v.

The WESTERN AND SOUTHERN LIFE
INSURANCE COMPANY,
Defendant.

No. 92–CV–70928–DT.

United States District Court,
E.D. Michigan, S.D.

Dec. 18, 1992.

Lori Barker, Berton May, Sanford Lakin, Southfield, MI, for plaintiff.

James Mellon, Troy, MI, for defendant.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is an employment discrimination case. Plaintiff, Ali Bazzi (Bazzi) is suing defendant, The Western and Southern Life Insurance Company (WSLIC), for breach of contract and for constructive discharge because of national origin discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act, MCLA § 37.2101, *et seq.* Now before the Court is WSLIC's motion for summary judgment. For the reasons which follow, the motion will be granted in part and denied in part.

### II.

### A.

Bazzi, a United States citizen of Lebanese descent, was initially employed by WSLIC as a sales representative in October of 1990 and assigned to WSLIC's Detroit–Western branch in Dearborn, Michigan. Bazzi asserts that beginning in January of 1991, coinciding with the outbreak of the Persian Gulf War (Operation Desert Storm), he began to experience a hostile and intimidating work environment due to slurs and harassment directed at him by co-workers because of his national origin. Bazzi says that, in response to his report of the harassing behavior, he was transferred

to WSLIC's Livonia, Michigan office in May of 1991. Bazzi further asserts that after the transfer he was required to interact with co-workers at the Dearborn office and their harassing behavior continued. Bazzi says that the harassment become intolerable so he resigned on August 5, 1991.

## B.

The following facts are not disputed. Bazzi applied for the sales representative position by completing WSLIC's standard employment application (Application) in July of 1991. Bazzi was then interviewed by District Sales Manager Walter Torney (Torney), who recommended Bazzi's hire to Divisional Vice–President Richard L. Hunter (Hunter). The decision to hire Bazzi and the offer of employment were made by Hunter, based on the Application, Torney's recommendation and a background investigation of Bazzi conducted for WSLIC by Equifax Services (Equifax).

The Application states, immediately above the signature of the applicant: "I UNDERSTAND THAT ANY MISSTATE-MENTS OR OMISSIONS IN THE ANSWERS GIVEN MAY BE GROUNDS FOR A REJECTION OR DISMISSAL." Question 6 of the Application instructs the applicant to provide: "Work experience for at least two years (including military service) beginning with present." In response to Question 6, Bazzi indicated only that he had been employed by Chams Mens Wear in a sales capacity from September 1987 to April 1990.

During discovery, WSLIC learned for the first time that Bazzi had been employed by Radisson Hotel as a bellman prior to the submission of the Application to WSLIC. Bazzi was terminated by Radisson on June 28, 1990 for "falsifying time records by punching in another employee." Bazzi's previous employment with Radisson and his termination from that employment were not indicated on the Application.

## III.

WSLIC moves for summary judgment on the Elliott–Larsen claim contained in Count I and the breach of contract claim contained in Count II on the ground that Bazzi's failure to include his Radisson employment experience on the Application prevents him, as a matter of law, from maintaining this action against WSLIC. WSLIC argues that summary judgment is compelled by the decision of the United States Court of Appeals for the Sixth Circuit in *Johnson v. Honeywell Information Systems, Inc.*, 955 F.2d 409 (6th Cir.1992). The Court will first address Count II.

## IV.

### A.

In *Johnson*, a terminated employee brought an action against her former employer alleging breach of contract and violation of Michigan's Elliott–Larsen Civil Rights Act, MCLA § 37.2101, *et seq*. The employer asserted as a defense that the employee had misrepresented her educational background on her employment application. The Sixth Circuit stated:

The principal issue in this diversity action is whether, under Michigan law, an employer may rely upon an employee's false representations made at the time of employment, of which the employer was unaware, and which were not the grounds for the employee's discharge, as a just cause defense to the employee's wrongful discharge and state civil rights claims. We hold that, in the circumstances presented in this case, it may.

955 F.2d at 410–11. The Sixth Circuit observed that the Michigan Supreme Court had not addressed this issue and, therefore it was obliged to predict the position that would be taken by the Michigan high court. The Sixth Circuit considered the decision of Michigan Court of Appeals in *Bradley v. Philip Morris, Inc.*, 194 Mich.App. 44, 486 N.W.2d 48 (1992), *vacated and remanded in lieu of granting leave to appeal*, 440 Mich. 869, 486 N.W.2d 737 (1992), and particularly the statement:

Evidence of employee misconduct occurring before termination is admissible as substantive evidence even if the former employer did not know of the mis-

conduct until after the termination. Just cause for termination may include facts and circumstances existing at termination but not known to the employer. 194 Mich.App. at 48, 486 N.W.2d 48, as precedential.

The Sixth Circuit also reasoned that the Michigan Supreme Court's ruling in *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), did not preclude an employer's defense that information discovered after the termination of employment provided just cause for termination. The Sixth Circuit concluded that "the Michigan Supreme Court would hold that a just cause for termination of employment may include facts unknown to an employer at the time of dismissal." 955 F.2d at 413. The *Johnson* court then described the circumstances under which the employer could successfully raise this defense:

> In order to provide a defense to an employer in a wrongful discharge claim, the after-acquired evidence must establish valid and legitimate reasons for the termination of employment. *As a general rule, in cases of resume fraud, summary judgment will be appropriate where the misrepresentation or omission was material, directly related to measuring a candidate for employment, and was relied upon by the employer in making the hiring decision.* These requirements are necessary to prevent an employer from combing a discharged employee's record for evidence of any and all misrepresentations, no matter how minor or trivial, in an effort to avoid legal responsibility for an otherwise impermissible discharge.

955 F.2d at 414 (emphasis added) (citation omitted).

### B.

WSLIC asserts that the three criteria set out in *Johnson* are met here: the omission was a material misrepresentation, it related directly to the evaluation of Bazzi's application, and the application containing the misrepresentation was relied upon in making the decision to hire Bazzi. In support, WSLIC presents the affidavits of Torney

and Hunter. Torney states that his recommendation to hire Bazzi was based on the information provided in the Application and that "[h]ad I been aware of Mr. Bazzi's employment and discharge from Radisson Hotel, I would not have made a favorable recommendation to Mr. Hunter." Hunter states that "I would not have made the decision to hire Mr. Bazzi had I been aware of his termination from the Radisson Hotel," and "[i]f I had been aware at any time during Mr. Bazzi's employment that he did not make full disclosure of prior employment history on the employment application, he would have been terminated."

### C.

#### 1.

■ Bazzi initially responds, supported by his affidavit, that his failure to include any mention of the Radisson Hotel employment and discharge did not constitute a culpable omission or misrepresentation, but rather was his earnest response to the Question 6 as he understand that question. Bazzi asserts that Question 6 only requested information pertaining to "sales" positions and that he did not include the Radisson Hotel employment because it was not employment in a sales capacity.

#### 2.

Bazzi next responds that WSLIC has not established the third element of the *Johnson* standard: reliance by the employer in the hiring process. Bazzi asserts that there is "no indication that [WSLIC] was relying upon Plaintiff's past job history in making the determination to hire him." Bazzi contends that a jury could conclude that hiring the decision was based on the "Overall Evaluation" sheet completed during the hiring process, the Equifax report, and Torney's favorable recommendation.

### D.

#### 1.

There is no objective support for Bazzi's subjective belief that only sales experience was requested by Question 6. His subjec-

tive belief is not reasonable in light of the unambiguous language of the application: "Work experience ... including military service" cannot reasonably be construed to mean "sales experience only." The Court is satisfied that there is no genuine dispute that the Application contained a misstatement by omission that Bazzi had been terminated from his previous employment for falsification of a time card.

### 2.

Bazzi does not dispute that the first and second elements of the *Johnson* standard are satisfied: that the omission was material and directly related to measuring his candidacy for employment. Bazzi's response as to the third element is unpersuasive. The statement that the record contains "no indication" of reliance is, at best, an unsupported and conclusory denial of the sworn statements of Torney and Hunter that Bazzi would not have been recommended for hire, hired, or retained, if his termination from the Radisson Hotel for falsifying time records had been disclosed or discovered. Bazzi does not provide any affidavit, deposition testimony, or other evidence that would identify a disputed issue of fact pertaining to the statements of Torney and Hunter.

Bazzi's assertion that there were other bases for WSLIC's decision to hire him is unrelated to whether WSLIC relied on the misrepresentation by omission from the Application. Obviously, absent the omitted information about his termination from Radisson Hotel, there was sufficient basis to hire Bazzi and WSLIC did hire him. The question at hand, however, is whether the disclosure of the termination from the Radisson Hotel would have altered that hiring decision and, therefore, WSLIC relied on the Application which omitted that information. There is no genuine dispute pertaining to this material fact.

### 3.

There are no genuine issues over the material facts that Bazzi misrepresented his employment history by omitting reference to his employment with and termination by the Radisson Hotel; that this misrepresentation was material to the hir-

ing process at WSLIC; that this misrepresentation directly related to the evaluation of his candidacy for employment; and, that WSLIC relied on the misrepresentation. The Court now turns to the legal consequence of these undisputed facts.

### E.

In *Johnson*, the Sixth Circuit considered the after-acquired evidence defense in the context of the three part standard described above to conclude that the employer was entitled to summary judgment on the employee's breach of contract claim. The Court is persuaded that *Johnson* is controlling in this case and that the undisputed facts establish that WSLIC is entitled to summary judgment on Bazzi's breach of contract claim.

### V.

### A.

■ Both WSLIC and Bazzi, however, proceed on the assumption that the three part *Johnson* standard applies in identical fashion and with equal force to the claims under Michigan's Elliott–Larsen Civil Rights Act contained in Count I. The Court is persuaded that this assumption misapprehends Elliott–Larsen, and, consequently relies inappropriately on *Johnson*.

### B.

The application of the after-acquired evidence defense in an action for breach of an employment contract is in the nature of a fraud in the inducement analysis and rests on the proposition that the employer is relieved of its contractual duties where that contract is the product of a misrepresentation. The duty of the employer arises from the contract itself and falls with that contract.

The duty of the employer with respect to refraining from acts of discrimination based on national origin does not arise from the contract, but rather is imposed by statute. Whether the misrepresentation that defeats the contractual obligation also defeats the formation of any employer-employee relationship was not addressed by

*Johnson,* nor has it been addressed by the parties here.

### C.

In *Johnson,* the Sixth Circuit relied on the conclusion of the Tenth Circuit, in *Summers v. State Farm Mutual Auto Ins. Co.,* 864 F.2d 700 (10th Cir.1988), that after-acquired evidence of just cause for termination precluded recovery under Title VII. Ostensibly adopting the *Summers* view, the *Johnson* court concluded that the misrepresentations precluded plaintiff from recovering damages under Elliott–Larsen. The Sixth Circuit also found that the plaintiff had failed to state an Elliott–Larsen claim.

### D.

While it is well established that the Title VII analysis guides the analysis of claims raised under Elliott–Larsen, *see, e.g., Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1311–12 (6th Cir.1989), it is equally well established that the damages available to claimants under Elliott–Larsen are not limited to the damages that Congress provided for under Title VII.[1] *See, e.g., Jenkins v. Southeastern Michigan Chapter, American Red Cross,* 141 Mich. App. 785, 799, 369 N.W.2d 223 (1985) (emotional distress damages recoverable under Elliott–Larsen); *Slayton v. Michigan Host, Inc.,* 122 Mich.App. 411, 416, 332 N.W.2d 498 (1983) (mental and emotional injury caused by sex discrimination recoverable under Elliott–Larsen). The broader range of damages available under Elliott–Larsen demonstrates that the Michigan Legislature intended more than a mere duplication of Title VII.

### E.

*Johnson* did not consider whether misrepresentation precluded recovery of *all* damages under Elliott–Larsen. The Sixth Circuit treated Elliott–Larsen as indistinguishable from Title VII, when the available remedies reveal a crucial distinction between the two statutory schemes. Con-

trary to WSLIC's assertion, *Johnson* is not dispositive of the claims contained in Count I. Similarly, WSLIC's reliance on *Milligan–Jensen v. Michigan Technological University,* 975 F.2d 302 (6th Cir.1992) (applying *Summers* to Title VII claim) and *Benson v. Quanex Corporation,* 1992 WL 63013, 1992 U.S. Dist. LEXIS 3689 (E.D.Mich. March 24, 1992) (assuming that Title VII and Elliott–Larsen are indistinguishable for the purposes of the after-acquired evidence) is misplaced.

### F.

The availability of noneconomic and emotional distress damages under Elliott–Larsen demonstrates that the Michigan Legislature intended to provide redress for the consequences of impermissible discrimination, without limiting the employer's liability to breaches that otherwise sound in contract. The application of the after-acquired evidence doctrine urged by WSLIC is inconsistent with this intent, as it would permit an employer to escape all of the consequences of discrimination through the fortuitous discovery of a basis for avoiding a contract. This result obfuscates the important distinction between the duties arising from contract and the duties imposed by remedial legislation, and overlooks the distinctions between Title VII and Elliott–Larsen. A false statement on an employment application is not an insurance policy covering bigotry.

### VI.

Accordingly, only as to Count II the motion is GRANTED and Count II is DISMISSED. As to Count I, the motion is DENIED.

SO ORDERED.

---

1. This is particularly so with respect to claims arising before the effective date of the amend-

ments to Title VII contained in the Civil Rights Act of 1991.