Nancy MARDELL, Plaintiff,

v.

HARLEYSVILLE LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. 91–1493.

United States District Court, W.D. Pennsylvania.

April 27, 1993.

Joel S. Sansone, Sansone & Associates, Pittsburgh, PA, for plaintiff.

Roslyn M. Litman, Vikram Chandhok, Litman, Litman, Harris, Brown & Watzman, Pittsburgh, PA, C. Stephens Vondercrone, Jr., Harleysville, PA, for defendant.

## MEMORANDUM AND ORDER

McCUNE, Senior District Judge.

We consider a motion for summary judgment filed by Defendant Harleysville Life Insurance Company ("Harleysville"). Plaintiff Nancy Mardell alleges that she was terminated from her position as Regional Director of Life Insurance for Harleysville in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.S. § 621, et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e, et seq. We have jurisdiction pursuant to 28 U.S.C.S. § 1331. For the reasons discussed below, the motion for summary judgment will be granted.

FACTS

DISCUSSION

Nancy Mardell applied for the position of Life Manager at Harleysville in December 1987.[1] Ms. Mardell submitted a résumé and completed a job application. Contained on the job application Ms. Mardell signed is the following language:

"The information provided on this employment application is correct and complete to the best of my knowledge. I realize that falsification and/or incomplete information may jeopardize my employment now or in the future."

Both Glyn D. Mangum, then vice-president of sales, and William J. Forloine, then vice-president of marketing, interviewed Ms. Mardell. Mr. Forloine communicated to Mr. Mangum his impressions of Ms. Mardell. After considering Ms. Mardell's résumé, job application and personal interview and Mr. Forloine's remarks, Mr. Mangum made the decision to hire Ms. Mardell. Ms. Mardell started work for Harleysville in February 1988.

Mr. Forloine, who became Ms. Mardell's direct supervisor when he became senior vice-president of marketing and sales, made the decision to terminate Ms. Mardell in February 1990 for stated reasons of poor performance. The within wrongful discharge action was filed September 6, 1991.

During the course of discovery, Harleysville learned for the first time that Ms. Mardell had misrepresented herself on her résumé and job application. Harleysville has submitted the affidavits of Messrs. Mangum and Forloine which state that had they known of the alleged misrepresentations prior to hiring Ms. Mardell, they would not have hired her and had the alleged misrepresentations become disclosed during Ms. Mardell's employment with Harleysville, she would have been discharged immediately. According to Harleysville, Ms. Mardell misrepresented on her résumé and job application that she had a college degree when she applied for the position at Harleysville and had had professional experience in various positions for which she had been paid.

When there is no issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate that there is no genuine issue of material fact. *Id.* All inferences from the underlying facts are to be viewed in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once the moving party has sustained his burden of proof, "the opposing party must introduce specific evidence showing that there is a genuine issue for trial." *Williams v. West Chester*, 891 F.2d 458, 464 (3d Cir.1989) (citation omitted).

1. The Law

 The issue we address is whether after-acquired evidence of Plaintiff's résumé and application fraud precludes Plaintiff from seeking relief under Title VII and the ADEA. The appellate courts are split on the issue and it has not been addressed by the Third Circuit Court of Appeals.

The "after-acquired evidence" doctrine was originated by the Tenth Circuit Court of Appeals in *Summers v. State Farm Mutual Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988). In *Summers*, Summers alleged he was wrongfully terminated from his position as a field claims representative due to his age and religious beliefs in violation of the Civil Rights Act of 1964 and the ADEA. Almost four years after Summers' discharge, the employer discovered that Summers had falsified over 150 company records made during the course of his employment. The court relied on the rationale of *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In *Mt. Healthy*, the Court held that an adverse employment decision, although substantially motivated by the employee's constitutionally protected conduct, does not justify relief if the employer can show that it would have

1. According to Harleysville, the job title "Life Manager" was changed to "Regional Director—

Life" during Ms. Mardell's tenure with Harleysville.

made the same decision for permissible reasons had the protected conduct not occurred. *Mt. Healthy,* 429 U.S. at 285–286, 97 S.Ct. at 575. In *Summers,* the court assumed that the employer's motive in discharging Summers was illegal in concluding that "while such after-acquired evidence cannot be said to have been a 'cause' for Summers' discharge in 1982, it is relevant to Summers' claim of 'injury,' and does itself preclude the grant of any present relief or remedy to Summers." *Id.* at 708. In short, Summers suffered no legal damage. The court made it clear that the "litany of *McDonnell Douglas* " did not apply because it "presupposes a 'legitimate nondiscriminatory reason'. *known* to the employer at the time of the employee's discharge." *Id.* at 704–705 *quoting McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

█ The Sixth Circuit Court of Appeals has adopted the approach of *Summers.* However, to prevent situations where unscrupulous employers might rummage through an employee's file for evidence of résumé fraud in order to escape legal responsibility for an otherwise unlawful discharge, the Sixth Circuit Court of Appeals has devised a three-part test. The misrepresentation or omission must (1) be material, (2) be directly related to measuring a person for employment, and (3) have been relied upon by the employer in making the decision. *Johnson v. Honeywell Information Systems, Inc.,* 955 F.2d 409, 414 (6th Cir.1992); *Milligan–Jensen v. Michigan Technological Univ.,* 975 F.2d 302, 304 (6th Cir.1992). The Sixth Circuit Court of Appeals views the problem of résumé fraud as one of causation. "[I]f the plaintiff would not have been hired, or would have been fired, if the employer had known of the falsification, the plaintiff suffered no legal damage by being fired." *Milligan–Jensen,* 975 F.2d at 304.

The Seventh Court of Appeals has adopted a modified *Summers* approach. In *Washington v. Lake County,* 969 F.2d 250 (7th Cir. 1992), the court was concerned that in some cases, although an employer would be likely not to hire someone who misrepresents himself on an application, the employer might be less likely to discharge an employee who had

started the job and who had proven himself capable prior to the discovery of the misrepresentation. The court found that a "résumé fraud" case was similar to the "mixed motive" cases discussed in *Mt. Healthy, supra,* and *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "In situations involving 'after-acquired' evidence, the employer must show by a preponderance of evidence that, if acting in a [nondiscriminatory] manner, it would have made the same decision had it known of the after-acquired evidence." *Washington,* 969 F.2d at 255.

The Eleventh Circuit Court of Appeals is the only appellate court to reject the approach in *Summers.* In *Wallace v. Dunn Construction Co.,* 968 F.2d 1174 (11th Cir. 1992), an application fraud case, the court reviewed *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), a suit which was brought under Title VII and decided after the *Summers* decision. The court understood *Price Waterhouse* to mean that the after-acquired evidence could not be used to ignore the "time lapse between the unlawful act and the discovery of a legitimate motive ..." *Id.* at 1180. The court held that after-acquired evidence is relevant to the relief due and then created a complex format concerning possible damages under Title VII and the Equal Pay Act, various remedies available to the plaintiff, and evidence an employer may use to restrict its exposure. In the dissent, Judge Godbold reasoned that the plaintiff did not have standing to maintain the suit. According to Judge Godbold, once it is determined that the plaintiff would not have been hired had the application fraud been known to the employer, that ends the inquiry. The status that would place the plaintiff in the protected group of employees "was fraudulently obtained and but for her fraud would have been denied." *Id.* at 1188. Judge Godbold distinguished *Summers* on the basis that it was late-discovered misconduct of an employee who was rightfully a member of the workforce.

We disagree with the majority opinion in *Wallace. Price Waterhouse* does not relate to the relief to which a victim of forbidden

discrimination in employment is entitled. Rather, *Price Waterhouse* is concerned with the factors that constitute liability for unlawful employment discrimination. *See Price Waterhouse,* 490 U.S. at 244–45, 109 S.Ct. at 1787–88 ("[T]he defendant may avoid a finding of liability [footnote omitted] only by proving that it would have made the same decision even if it had not allowed gender to play such a role."). The issue faced in *Summers,* and in the present action, is whether the plaintiff was injured by the forbidden discrimination. The focus is the appropriate remedy rather than the cause of a defendant's employment decision.

Accordingly, we hold that the after-acquired evidence doctrine is applicable to the facts in this action. To safeguard against employer abuse, we adopt the three-part test set forth by the Sixth Circuit Court of Appeals in *Johnson* and *Milligan–Jensen.*

2. The Misrepresentations

■ Since Ms. Mardell alleges that there are issues of fact concerning the falsity of her representations on her résumé and job application, the misrepresentations require discussion.

It is undisputed that Ms. Mardell misrepresented on both her résumé and job application that she had received a bachelor of science degree in 1977 from the University of Pittsburgh when in fact she did not earn a college degree until she completed five credits in the 1992 fall term. We find it incredible that Ms. Mardell was unaware that she did not have a college degree when she applied for the position of Regional Director at Harleysville Life Insurance Company.

The following alleged misrepresentations on Ms. Mardell's résumé and job application concern employment and professional experience. On her résumé Ms. Mardell indicated that her professional experience included being a "writer-interviewer" for Mercy Hospital's in-house publication "as part of the public relations staff." She represented that as a writer-interviewer she "[d]id extensive research and development and personal interviewing." On her application Ms. Mardell wrote that she was employed part-time by Mercy Hospital between September 1972 and September 1973 receiving a salary of $5,000. Also on her résumé under professional experience Ms. Mardell represented that she was a "therapist." She described experience as a therapist as doing "individual, family and group counseling for South Hills Mental Health Center" and that she "conceived and implemented new procedures for counseling groups in high schools." On her job application Ms. Mardell wrote that between September 1973 and October 1974 she worked as a therapist at South Hills Mental Health Center receiving a salary of $8,500. Her reason for leaving the job as a therapist was "not enough money." Lastly, Ms. Mardell listed her professional experience to include "public relations director."[2] As a public relations director Ms. Mardell represented that she "[m]arketed and sold group packages for Quality Inn Motel" and that she "[d]eveloped new concepts for promotion, handled office budget, and supervised office staff." She wrote on her job application that she worked at the Quality Inn between September 1973 and October 1974.

It is uncontested that Ms. Mardell lied when she wrote that she was paid for her "employment" as a "therapist" at South Hills and "writer-interviewer" at Mercy Hospital. Discovery unveiled that her connection with those institutions was part of her field work for undergraduate classes in psychology and journalism at the University of Pittsburgh. Thus, she was never employed by either of the institutions. Moreover, Ms. Mardell was at Mercy Hospital during the fall term of the 1975–1976 school year and not working part-time at Mercy between September 1972 until September 1973. Although Ms. Mardell did write and interview at Mercy Hospital, this was part of her academic field course as opposed to a position or job at Mercy. Again, at South Hills, while Ms. Mardell may

**2.** Ms. Mardell also listed under professional experience on her résumé and as employment on her job application "instructor-evaluator" at Alcoa between January 1957 and April 1958 and as an agent and registered representative for Pru-
dential Life Insurance with marketing and sales experience. Ms. Mardell began employment with Prudential in March 1977 and was working there at the time she applied for the position at Harleysville.

have done some counseling as part of her course work during the fall term of 1975 and/or winter term of 1976, it did not represent employment as a paid therapist for South Hills between September 1973 and October 1974, a reasonable inference from her résumé and job application.

Regarding her work as a public relations director at the Quality Inn Motel, Ms. Mardell has admitted that she exaggerated her job responsibilities. She testified that her principal work was as a desk clerk, that her marketing concepts were never implemented, that she supervised other desk clerks only when the manager was not present, and that she did not handle the office budget.

To summarize, we find that on her résumé and job application Ms. Mardell (1) misrepresented herself as being a college graduate, (2) misrepresented herself as having paid, professional experience in therapy and writing/interviewing when this experience was in fact for college course work, (3) misrepresented the dates she did her college field work at Mercy Hospital and South Hills, (4) falsified her reason for leaving her "job" at South Hills, and (5) exaggerated her employment responsibilities while working at the Quality Inn Motel.

### 3. Application of the *Johnson* test.

As stated above, *Johnson* requires that the misrepresentation or omission "was material, directly related to measuring a candidate for employment, and was relied upon by the employer in making the decision." *Johnson*, 955 F.2d at 414.

In his affidavit Mr. Mangum states that he made his decision to hire Ms. Mardell because he felt she was the best qualified of the candidates. In making his decision, Mr. Mangum considered that Ms. Mardell had a college degree as well as the professional experience listed on her résumé and job application. He believed Ms. Mardell appeared to be a person of integrity and honesty. It is Mr. Mangum's philosophy to look for a pattern of success from a prospective employee, notwithstanding the previous fields of endeavor. Mr. Mangum does not believe that academic field work as a therapist and writer-interviewer qualifies as professional experience. The veracity of the information provided in an application for employment and/or résumé is important to Mr. Mangum. Mr. Mangum declares he would not have hired Ms. Mardell had he been aware or become aware, prior to deciding to hire Ms. Mardell, that she had falsified and misrepresented on her résumé and job application, as well as during his interview with Ms. Mardell, the fact that she had a college degree and employment of the type and duration listed.

Mr. Forloine was the other employee who participated in the decision to hire Ms. Mardell. Mr. Forloine relied on the same misrepresentations as did Mr. Mangum. Mr. Forloine states that integrity, honesty and reliability of employees were and remain three of the qualifications for a position at Harleysville. In his notes of his interview with Ms. Mardell, Mr. Forloine noted as a plus that Ms. Mardell had a college degree. Mr. Forloine declares that had he known before Mr. Mangum's decision to hire Ms. Mardell that Ms. Mardell had falsified and misrepresented on her job application and résumé, her degree status and a substantial portion of her other experience and qualifications, he would have strongly advised she not be hired.

Mr. Forloine was Ms. Mardell's direct supervisor when he became senior vice-president of marketing and sales and it was his decision to terminate Ms. Mardell in May 1988. Mr. Forloine states that had he become aware of Ms. Mardell's falsifications and fabrications during her employment, he would have immediately fired her. Mr. Forloine attests that this was consistent with Harleysville policy as stated on the job application form. Lastly, given what Harleysville now knows about Ms. Mardell's misrepresentations on her job application and résumé, Mr. Forloine asserts that Harleysville would never employ her.

Thus, the uncontested affidavits of Messrs. Mangum and Forloine show that Harleysville relied on the misrepresentations presented in Ms. Mardell's résumé and job application. Harleysville has also demonstrated that it uses past job experience for measuring a job

candidate and considers honesty and integrity a qualification for employment. Lastly, Harleysville has shown that Ms. Mardell's résumé and application fraud were such that Ms. Mardell would not have been hired had Harleysville known of the misrepresentations and that Ms. Mardell would have been terminated upon discovery of the misrepresentations. Ms. Mardell has not rebutted any statements of Harleysville that it would not have hired her had she truthfully completed the job application and not falsified her résumé. Nor is there any evidence that Harleysville has failed to terminate an employee for misrepresentations as serious as hers.

We disagree that the misrepresentations do not meet the requisite level of severity. *See, e.g., Dotson v. United States Postal Service,* 977 F.2d 976 (6th Cir.1992) (Having lied on his employment application concerning prior employment, state of health and use of prescription drugs, the plaintiff lacked the honesty and trustworthiness required of an United States Postal Service position); *Milligan–Jensen v. Michigan Technological Univ.,* 975 F.2d 302 (6th Cir.1992) (The fact that plaintiff omitted from her job application a DUI conviction rather than the conviction itself satisfied the materiality, relatedness, and employer reliance criteria); *O'Driscoll v. Hercules, Inc.,* 745 F.Supp. 656 (D.Utah 1990) (That plaintiff misrepresented on her employment application her age, age of her children, year of high school graduation and the fact that she had never previously applied for work with the employer fulfilled the seriousness requirement of *Summers* and were not simply misunderstandings.).

Potential employees who wish to present themselves in the best possible light might puff. Plaintiff went beyond simple puffery and lied about her education and job experience. As stated by a district court, "[i]t would distort the purpose of these causes of action to allow a plaintiff to recover from an employer against whom the plaintiff had committed misconduct, such that, had the employer known of the misconduct, the employer would certainly have terminated the plaintiff." *O'Driscoll,* 745 F.Supp. at 660–661.

Accordingly, we find that no genuine issues of material of fact exist and Harleysville is entitled to judgment as a matter of law.