12 F.3d 213
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael LOGAN, Plaintiff-Appellant,
v.
EXPRESS, INC., Defendant-Appellee.
 No. 92-4363.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1993.
 
 Before: MILBURN and NELSON, Circuit Judges, and GILMORE, Senior District Judge.[1]
 PER CURIAM.
 
 
 1
 This is a discrimination-in-employment case where the plaintiff, a male, asserts that he was discharged because of his sex. Summary judgment was entered in favor of the defendant employer. On appeal the plaintiff contends, among other things, that he established a prima facie case of sex discrimination that included evidence showing the defendant to be the "unusual employer who discriminates against the majority." Because we do not find the plaintiff's contentions persuasive, and because it is undisputed that the plaintiff falsified his employment application, we shall affirm the judgment for the defendant.
 
 I.
 
 2
 The defendant, Express, Inc., operates a nationwide chain of retail clothing stores. The women's apparel division of the chain is known as "Express," and the men's apparel division is called "Structure." Each store is run by a sales manager, assisted by employees known as "partners."
 
 
 3
 The plaintiff, Michael Logan, sought employment with the company in April of 1990. He was interviewed by Peter Grimes, an executive vice-president of Express, and Patrick McGahan, vice-president of operations for Structure. Grimes and McGahan decided to hire Mr. Logan, but they were uncertain where he would ultimately be placed within the defendant's operation. His initial assignment was on the Express side of the business; Express was more highly developed that Structure, and Grimes and McGahan believed Logan would receive more intensive training there.
 
 
 4
 Because of his perceived potential, Logan was "fast-tracked." Fast-tracking is reserved for qualified individuals who have prior experience in running a business or high-volume sales operation and who are thought to be capable of moving into district manager positions within a fairly short time. Fast-track promotions are dependent on the individual's successful performance at lower management levels, and poor performance can result in early termination.
 
 
 5
 Mr. Logan started work on June 5, 1990, as a partner in the defendant's Northland Express Store in Columbus, Ohio. Shortly thereafter he was promoted to sales manager for another Columbus store, receiving a district manager's salary even though he did not hold a district manager's position. Within a month he became manager of the Columbus City Center Express Store, one of the largest stores in the defendant's entire chain. There Mr. Logan was supervised by Julie Benkovitz, a district manager, and Diane Nelson, a regional manager. Logan's responsibilities included hiring, training and supervising the store's staff, ensuring that the store was clean and presentable, and handling paperwork of various kinds.
 
 
 6
 Ms. Benkovitz gave a deposition in which she testified that she discerned problems in Mr. Logan's performance in October or November of 1990. The store's backroom office area was not well organized, she said, and the store was often dirty. She received complaints from some of the partners at the store that they were working extremely late in the evening but that Mr. Logan was not putting in comparable hours. Ms. Benkovitz observed a high turnover of part-time sales employees, some of whom complained that Mr. Logan did not treat them fairly on the sales floor.
 
 
 7
 Diane Nelson testified that she had concerns similar to Ms. Benkovitz's. Ms. Nelson also expressed some dissatisfaction with the store's sales. Both women observed what they called poor leadership qualities in Mr. Logan, and they met with him on different occasions to discuss their concerns. Ms. Nelson suggests in her testimony that Mr. Logan was resistant to suggestions for improvement.
 
 
 8
 Mr. Logan filed an affidavit and deposition testimony in which he countered many of these assertions of poor performance by suggesting that the problems were with the store itself, that the difficulties in hiring part-time staff resulted from a low rate of pay, and that Ms. Benkovitz and Ms. Nelson were interfering with the performance of his duties. He also noted that sales improved after he came on board. (Notwithstanding the increase in sales, Ms. Nelson and Ms. Benkovitz testified that they believed the store was not achieving its sales potential.)
 
 
 9
 On December 29, 1990, after discussing the situation with Ms. Nelson, Ms. Benkovitz gave Mr. Logan a notice of unsatisfactory performance. The notice identified a number of specific problem areas, including failure to staff the store adequately, difficulties in dealing with employees, failure to implement the company's customer service program, and leaving at night before the store was ready for the next day's business. The notice directed Mr. Logan to hire ten additional persons "in the Express image;" to maintain staffing at 30 employees; to implement and maintain the customer service management program; and not to leave the store until it was under control for the next day. The notice stated that failure to comply would result in separation from the company.
 
 
 10
 Mr. Logan did not satisfy Ms. Benkovitz that he had met the stated requirements, and Ms. Benkovitz and Ms. Nelson recommended to Peter Grimes that Logan's employment be terminated. Mr. Grimes accepted the recommendation, and Logan was discharged on February 23, 1991. Mr. Logan testified that Ms. Benkovitz called him "a great guy," but said that he did "not fit in" and "just wasn't Express."
 
 
 11
 Mr. Logan brought suit against Express in the Common Pleas Court of Franklin County, Ohio, asserting a variety of state law claims. He subsequently amended his complaint to add a sex discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. Express removed the case to the United States District Court for the Southern District of Ohio, and subsequently filed a motion for summary judgment. The district court granted summary judgment on the Title VII claim and dismissed the state law claims without prejudice. This appeal followed.
 
 II.
 
 12
 To prevail on a motion for summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Summary judgment is appropriate against a party who, having been called upon to do so, fails to come forward with evidence tending to establish a disputed element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is not entitled to go to trial on the basis of allegations alone; significant probative evidence must be presented in support of the complaint. Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir.1991). This court reviews summary judgment proceedings de novo, making all reasonable inferences in favor of the nonmoving party. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 
 13
 Mr. Logan alleges that his discharge represented an act of intentional discrimination against him as a member of the male sex. Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a Title VII plaintiff may establish a prima facie case of improper discrimination in hiring by showing that he belongs to a protected group, that he sought and was qualified for a job for which the employer was seeking applications, that despite his qualifications he was rejected, and that after his rejection the position remained open and the employer continued to seek applications. See 411 U.S. at 802. This analytical framework may be modified to accommodate different employment discrimination contexts, id. at n. 13, and it has been extended to promotion, discharge, compensation, and other conditions of employment. Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir.1985).
 
 
 14
 In a reverse discrimination case, where the person claiming to be the victim of discrimination belongs to a dominant group, a presumption of discrimination does not arise unless the evidence shows that the employer is the unusual one that discriminates against the majority. Jasany v. United States Postal Service, 755 F.2d 1244, 1252 (6th Cir.1985). With respect to such cases we have said this:
 
 
 15
 "[A] prima facie case of 'reverse discrimination' is established upon a showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority,' ... and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group." Murray v. Thistledown Racing Club, 770 F.2d at 67, citations omitted.
 
 
 16
 Accord, Ruth v. The Children's Medical Center, 940 F.2d 662 (6th Cir.1991) (male pharmacist alleging sex discrimination) (unpublished).
 
 
 17
 Mr. Logan argues that his is not a reverse discrimination claim, because Express hires mostly females and he belonged to a minority within the Express organization. The composition of the work force, however, does not determine whether a reverse discrimination analysis is appropriate. See Parker v. Baltimore & Ohio Railroad Co., 652 F.2d 1012, 1017 (D.C.Cir.1981). The approach followed in Murray v. Thistledown Racing Club is appropriate here because Mr. Logan is not a member of a socially disfavored group.
 
 
 18
 The plaintiff also seeks to avoid a reverse discrimination analysis on the grounds that he has presented direct evidence of discrimination and that this is a "mixed-motive" case. See Blalock v. Metals Trades, Inc., 775 F.2d 703, 707 (6th Cir.1985). In our view, however, there is no direct probative evidence of impermissible discrimination against Mr. Logan individually, just as there is no probative evidence that Express discriminates generally against male managers.
 
 
 19
 We must take it as given that Ms. Nelson advised Mr. Logan that she wanted women salespersons who were in the "Express image," but this does not prove that Express discriminated against men in managerial positions. Mr. Logan also relies on a statement which Peter Grimes allegedly made to Mr. Logan's brother-in-law, Thomas Duffy, when Duffy approached Grimes about transferring to Express almost a decade earlier. Mr. Grimes allegedly told Duffy that Express was "targeting a younger clientele and a male might make them feel uncomfortable." This statement, made eight years before the plaintiff was hired, is not probative of the company's attitude toward men in 1991. Neither does it demonstrate that Mr. Logan was singled out for discharge because he was a male; he was a male, after all, when Express hired him in the first place.
 
 
 20
 Mr. Logan cites Ms. Benkovitz's observation that he was "just not 'Express' " as evidence of discriminatory treatment. On its face, however, the observation is hardly sexist. Express discriminated in favor of Mr. Logan by paying him a district manager's salary, it should be noted, and it placed him on a fast track that was to have led to promotion to a district managership within three to six months if his performance met the company's expectations. There is no dispute about this, just as there is no dispute about the fact that other men who had been fast tracked--including two men fast tracked by Ms. Nelson--were able to make the grade. Against this background, and absent probative evidence that when Logan was told he was "just not 'Express' " it was an indirect way of telling him he was "just not female," there is no reason to doubt that being "just not 'Express' " meant being condescending toward subordinates, disorganized, and the like.
 
 
 21
 The record does not demonstrate that women situated similarly to Mr. Logan were treated any differently than he was. See Murray v. Thistledown, 770 F.2d at 67. Ms. Nelson testified without contradiction that women who performed poorly in sales manager positions were discharged despite high sales volumes. Having conducted a de novo review of the record as a whole, we agree with the district court that the plaintiff failed to establish a prima facie case of sex discrimination and failed to demonstrate that the defendant's stated reasons for discharging him amounted to a pretext.
 
 
 22
 We also believe that Express was entitled to summary judgment on a different ground. When Mr. Logan filled out his employment application he told Express that he had graduated from Franklin University. At his deposition, however, he testified that he had never received a degree from Franklin University. The employment application form stated that any falsification would be ground for dismissal, and there is unrebutted testimony that the company would have discharged Mr. Logan had it known he lied on the application form.
 
 
 23
 Under these circumstances, Express was entitled to judgment as a matter of law whether or not Mr. Logan was discriminated against on the basis of sex. See Milligan-Jensen v. Michigan Tech. Univ., 975 F.2d 302, 305 (6th Cir.1992), cert. dismissed, 114 S.Ct. 22 (1993). This circuit "has committed itself" to the rule in Summers v. State Farm Mutual Auto. Ins. Co., 864 F.2d 700 (10th Cir.1988) (commission of an offense that would have resulted in discharge precludes recovery for discrimination under Title VII notwithstanding that the employer did not know of the offense at the time of the alleged discrimination). Id. at 304, citing Johnson v. Honeywell Info. Sys., Inc., 955 F.2d 409 (6th Cir.1992); accord Dotson v. United States Postal Service, 977 F.2d 976, 978 (6th Cir.), cert. denied, 113 S.Ct. 263 (1992).
 
 
 24
 The judgment of the district court is AFFIRMED.
 
 
 25
 GILMORE,* Senior District Judge, dissenting.
 
 
 26
 Upon review of the entire record in the court below, I am persuaded that plaintiff Logan presented sufficient evidence of sex discrimination to create genuine issues of material fact for trial.
 
 
 27
 Logan argues that the district erred in granting summary judgment in favor of Express on his Title VII claim. On appeal, plaintiff contends that the district court erred in applying the Ruth modified McDonnell Douglas test for reverse discrimination because he presented the district court with sufficient "direct evidence" of discrimination. Additionally, Mr. Logan asserts he submitted evidence to the district court that defendant Express is that unusual employer who discriminates against the majority and, therefore, has established a prima facie case of sex discrimination.
 
 
 28
 As direct evidence of Express' discriminatory intent, Logan first relies upon a comment allegedly made by district manager Julie Benkovitz to Logan that, "You [are] one of our best managers, but you [are] just not 'Express' and do not 'fit in.' " Logan maintains that this statement is compelling evidence of sex discrimination, and it also established that defendant's stated non-discriminatory business justification for terminating him on the basis of poor job performance was pretextual.
 
 
 29
 As further support for his Title VII claim, Logan points to the fact that the employee handbook refers to salespersons as "Expressettes." He asserts that this evidence creates an inference that to be "Express" is to be female, and argues that, because the "Express Image" is considerably easier for a woman to meet, it has a disparate impact on male applicants and employees.
 
 
 30
 Logan also asserts as direct evidence of sex discrimination certain directives from Diane Nelson and Julie Benkovitz to the effect that he hire only women with the "Express Image" as salespersons, and that no men were to be hired. He maintains that these directives are probative of whether he was terminated because of his sex.
 
 
 31
 Finally, Logan relies upon a comment allegedly made to Thomas Duffy, a former employee of The Limited, Inc.[1] In his deposition, Mr. Duffy testified that when he inquired about working at Express, Executive Vice-President Peter Grimes told him that Express was "targeting a younger clientele and a male might make them feel uncomfortable [but] if it ever changed in the future, he would certainly keep [Duffy] in mind." Mr. Logan argues that although this statement was made to Mr. Duffy some eight years before he was hired, when considered in conjunction with Nelson's and Benkovitz's recent directives not to hire men, this evidence suggests that plaintiff was fired for not "fitting in" the female environment and not having the correct "Express Image."
 
 
 32
 In this case, the district court's conclusion that Logan failed to state a prima facie case was based solely on its determination that he failed to allege the background circumstances necessary to satisfy the elements described in the modified McDonnell Douglas test for reverse discrimination as stated in Ruth, supra. After examining the record, taken as a whole, I cannot agree with the majority's decision to affirm the judgment of the district court. I find that plaintiff's alleged direct evidence of discrimination creates genuine issues of material fact. There appears to be a genuine dispute over whether Logan was discharged because of his sex, in violation of Title VII, or whether he was terminated on the basis of poor job performance, as defendants argued. I conclude that the trier of fact should have been allowed to determine whether plaintiff was fired for not "fitting in" or because he did not possess the "Express Image" simply by virtue of the fact that he is a male. Moreover, there appears to be a genuine dispute over whether Express officials Diane Nelson, Julie Benkovitz and Peter Grimes made comments indicative of a discriminatory policy against hiring male applicants for certain positions in the Express stores. For the reasons stated, I would reverse the judgment of the district court.
 
 
 
 [1]
 The Honorable Horace W. Gilmore, United States Senior District Judge for the Eastern District of Michigan sitting by designation
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Express, Inc., the defendant in this case, is a division of The Limited, Inc