14 F.3d 600
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Willie AUSLER, Plaintiff-Appellant,
v.
PIERCE HARDY REAL ESTATE, INC., d/b/a 84 Lumber Company,
Defendant-Appellee.
 No. 93-1433.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1993.
 
 Before: KENNEDY, MARTIN and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment for the defendant in an employment-related race discrimination case. Upon de novo review of the record, we find ourselves in agreement with the district court's disposition of the matter. The judgment will therefore be affirmed.
 
 
 2
 * In January of 1990 the defendant lumber company hired the plaintiff, Willie Ausler, as a part-time yard man for a retail store operated by the company in Jackson, Michigan. The duties of the job included unloading trucks, loading customer orders, general cleaning, and other duties as assigned.
 
 
 3
 Shortly after being hired Mr. Ausler told the store manager, Ron Gamble, that he was interested in becoming a manager trainee. Gamble told Mr. Ausler that to be considered for such a position he would have to complete an application and attend an interview with the area manager.
 
 
 4
 Mr. Ausler sent a written application to Mark Reginelli, the area manager, but failed to appear at an interview session conducted by Reginelli at the Jackson store. Mr. Ausler also failed to attend a later round of interviews conducted at the Jackson store by Reginelli's replacement, Larry Nicholi. Gamble finally scheduled an interview for Mr. Ausler in Sylvania, Ohio, and told him when it was to be held; again, however, Ausler failed to attend.
 
 
 5
 On February 12, 1991, having heard that a new manager trainee was being hired for the Jackson store, Mr. Ausler told Gamble that he was tired of performing manager trainee duties at the pay of a yard man; he said that he would no longer perform such duties without additional pay. Gamble pointed out that manager trainees had duties in addition to those which Mr. Ausler was performing, and he told Ausler to take three days off from work to think it over. Responding that he didn't need three days to think about it, Mr. Ausler punched out on the time clock. He attempted to return to work three days later, at which time he was told that he no longer had a job. His time card for February 12 contains a notation indicating that he was let go.
 
 
 6
 Following an unsuccessful proceeding before the Equal Employment Opportunity Commission, Mr. Ausler, who is black, brought suit in the Circuit Court for the County of Jackson, Michigan. The defendant removed the action to the United States District Court for the Eastern District of Michigan. The district court ultimately granted summary judgment to the defendant, and this timely appeal followed.
 
 II
 
 7
 To prevail on a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This court's review of a grant of summary judgment is de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). We apply the same test for summary judgment as that which the district court must apply. Id.; Buckner v. City of Highland Park, 901 F.2d 491, 494 (6th Cir.), cert. denied, 498 U.S. 848 (1990).
 
 
 8
 Count I of Mr. Ausler's complaint is based upon Michigan's Elliot-Larsen Civil Rights Act, M.C.L. Secs. 37.2101 et seq. Ausler alleges in Count I that (1) he was "unfairly and improperly discharged"; (2) he was denied a promotion on the basis of race; and (3) he was subjected to "racial harassment and racial slurs."
 
 
 9
 In granting summary judgment on the wrongful discharge claim, the district court concluded that the plaintiff had failed to make a prima facie showing that his discharge was racially motivated. Moreover, the court went on to hold, the defendant had articulated a legitimate, nondiscriminatory reason for the discharge, and the plaintiff had not shown the stated reason to be a pretext. We agree.
 
 
 10
 The plaintiff's employment was terminated, as noted above, after the plaintiff told his supervisor, Ron Gamble, that he was no longer willing to work at a yard man's pay. The plaintiff's primary concern was that he was "loading up" customers for manager trainees. Ron Gamble pointed out to him, however, that there were a number of manager trainee duties that the plaintiff was not performing. When the plaintiff was told to take three days off to think it over, he responded that he did not need to think it over and he walked off the job. On attempting to return to work, the plaintiff was told that he was no longer on the payroll.
 
 
 11
 We conclude, as did the district court, that this evidence could not support a finding that the discharge was racially motivated. Although the plaintiff considered his pay inadequate for the work he was doing, he had previously received a pay raise that the other yard men did not get. And other yard men, who were white, performed the same sort of work that the plaintiff did.
 
 
 12
 The evidence failed to show that Ron Gamble had any racial animosity toward the plaintiff. Gamble had hired the plaintiff in the first place, had given him a raise, and had taken appropriate steps in response to the queries about the manager trainee position. Gamble testified that on occasion he and the plaintiff went to lunch and to bars together. And the plaintiff performed favors for Gamble that he would have been unlikely to perform had he been aware of racial animosity on Gamble's part.
 
 
 13
 The evidence cannot be construed to establish a prima facie case of disparate treatment with respect to the discharge. None of the other yard men had complained to management about the extra duties they were asked to perform, and Mr. Ausler was the only employee who refused to continue performing such duties.
 
 
 14
 In attempting to show that the defendant's failure to promote him to the position of manager trainee was racially motivated, the plaintiff relies primarily on the fact that a coworker, Kevin Klein, allegedly heard Mark Reginelli say that he would never hire a black man as a manager trainee. (Reginelli denied having made such a remark, but for present purposes we shall assume that he did so.) To establish a prima facie case, however, the plaintiff must demonstrate, among other things, that (1) he applied for a job (2) for which he was qualified. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The evidence fails to establish either of these elements here. Ron Gamble's testimony shows that although Mr. Ausler completed a written application, he did not take the further step of appearing for an interview. The plaintiff says that he should not have been expected to travel to another store for an interview, but white applicants for manager trainee positions were required to do precisely that. The plaintiff simply never completed the application process.
 
 
 15
 The plaintiff would not have been promoted in any event, because it would have come out that he had previously used illegal drugs. All manager trainee applicants must pass a Personnel Selection Inventory test, which includes a section that calls for a detailed history of any drug use. The plaintiff stated that he began using cocaine in 1988 and that he quit for good in 1991. He claims in his brief on appeal that his drug use was only for a three- or four-month period in 1988, followed by a brief recurrence in 1991, but the length of use is immaterial. Patrick Bove, the defendant's director of human resources, stated in an affidavit that any disclosure of drug use would have ruled out an offer of a manager traineeship. Although the defendant did not learn of the drug use until after Mr. Ausler filed his complaint, that fact is not dispositive; the claim is barred regardless of when the defendant learned that the plaintiff did not meet the qualifications for the job. See Milligan-Jensen v. Michigan Tech. Univ., 975 F.2d 302, 303-04 (6th Cir.1992), cert. dismissed, 114 S.Ct. 22 (1993); Johnson v. Honeywell Information Systems, Inc., 955 F.2d 409 (6th Cir.1992).
 
 
 16
 Finally, Mr. Ausler claims that he was subjected to a racially hostile environment at work. As he was leaving for lunch one day, he says, Steve Barkman, a manager trainee, called him "boy" and asked him where he was going. When the plaintiff objected to the use of the word "boy," Barkman asked him if he preferred to be called "nigger." Mr. Ausler testified that he complained of this to the co-manager then on duty, Scott Black. Mr. Black indicated in his deposition that he reprimanded Barkman and told him that another such incident would be grounds for being fired. Mr. Ausler himself said that there were no more episodes of this nature with Barkman.
 
 
 17
 Mr. Ausler continued to complain to coworker Vern Corser about the latter's racial jokes and use of the word "nigger" in various contexts. When Ausler raised the issue with him, Corser would apologize or say he meant nothing by it. Corser admitted saying "nigger" on an occasion when he was watching a movie with coworkers during their break, and he suggested the plaintiff likewise participated in inappropriate joke-telling. Corser went on to testify that he occasionally went to lunch with the plaintiff and that he helped the plaintiff install carpet at his house. Corser testified that he was at Mr. Ausler's house about three times, that Mr. Ausler came to his house once, and that they were both at Kevin Klein's house three or four times.
 
 
 18
 Occasional or sporadic instances of offensive language do not establish a racially hostile environment. See Stotts v. Memphis Fire Dept., 858 F.2d 289, 302 (6th Cir.1988); Torres v. County of Oakland, 758 F.2d 147, 152 (9th Cir.1985). No such environment has been shown here, in our view, and there is no basis on which a jury could be allowed to find otherwise.
 
 
 19
 There is no evidence, moreover, that the management of the Jackson store was made aware of any pattern of hostility. Ron Gamble, as store manager, and Mark Reginelli and Larry Nicholi, as area managers, all testified that they had heard no complaints of racial hostility from Mr. Ausler. The one complaint that Mr. Ausler did make--to co-manager Scott Black--resulted in a reprimand to Steve Barkman. Under no interpretation of the evidence can it be concluded that the defendant endorsed or permitted a racially hostile environment. See Bell v. Chesapeake & Ohio Ry. Co., 929 F.2d 220 (6th Cir.1991).
 
 III
 
 20
 Count II of the complaint rests on the proposition that the defendant's written "Fair Employment Policy" created an implied employment contract the breach of which entitled the plaintiff to damages. Under Toussaint v. Blue Cross & Blue Shield of Mich., 408 Mich. 579, 292 N.W.2d 880 (1980), an employee may have a cause of action based on written policy statements that have become part of the employment contract by express agreement or through an employee's legitimate expectations. The policy statement in question here includes a prohibition against discrimination or harassment of an associate on racial or ethnic grounds.
 
 
 21
 The district court concluded that the Michigan Supreme Court has not expanded the Toussaint doctrine to a point that could benefit the plaintiff in this case. In Dumas v. Auto Club Ins. Assn., 437 Mich. 521, 473 N.W.2d 652 (1991), the Supreme Court declined to extend the "legitimate expectations leg" of Toussaint beyond wrongful discharge disputes. Relying upon this limitation, the district court held that the defendant's policy of treating employees fairly could not make the defendant liable for a hostile work environment or a failure to promote.
 
 
 22
 We agree with the district court. The rule announced in Dumas is one of "containing Toussaint to the wrongful-discharge scenario." 437 Mich. at 531. Mr. Ausler's Toussaint claim dealt with the allegedly hostile work conditions and the failure to promote. As pleaded, this count did not come within Toussaint/Dumas.
 
 
 23
 Accordingly, and for all of the reasons stated by the district court in its order granting the defendant's motion for summary judgment, the judgment is AFFIRMED.