**Rosie A. BONGER, Plaintiff,**

v.

**AMERICAN WATER WORKS, et al., Defendants.**

**Civ. A. No. 90–C–1592.**

United States District Court, D. Colorado.

April 8, 1992.

Gregory Eurich, Denver, Colo., Kathryn Miller, Littleton, Colo., for plaintiff.

Steven Merker, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Rosie A. Bonger, an Hispanic woman, commenced this action in state court against the defendants American Water Works Association ("American"), John B. Mannion and Jack W. Hoffbuhr (American's Executive Director and Deputy Executive Director, respectively) asserting claims for: (1) breach of contract; (2) promissory estoppel; (3) intentional interference with contract; (4) wrongful termination; (5) defamation; and (6) sex and race discrimination and retaliation under Title VII, 42 U.S.C. §§ 2000e *et seq.* Defendants removed the action and since have filed a motion for summary judgment arguing that the plaintiff's claims are barred by the rule laid down in *Summers v. State Farm Mutual Automobile Ins. Co*, 864 F.2d 700 (10th Cir.1988). Plaintiff has responded by opposing the motion.

The parties have fully briefed the issues and oral argument was heard on April 7, 1992. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1367.

### I. *Factual Background.*

The following facts appear to be undisputed: In August 1988, American advertised a position for a Human Resources Director. Initial screening of the applications and resumes was conducted by Paula Green, American's Director of Personnel. Green's screening resulted in rejection of all applicants who did not have college degrees and a minimum number of years experience in the human resources field. Based upon the representations in their resumes, both the plaintiff and one Alvin Griggs met the experience and degree criteria. Plaintiff and Griggs were then interviewed by the defendant Mannion. In September 1988, American hired the plaintiff as its Human Resources Director.

As Human Resources Director, the plaintiff was responsible for administering salaries and benefits, coordinating candidate selection, drafting and administering company policies and procedures, identifying and implementing training programs and serving as American's affirmative action officer.

On February 2, 1990, the plaintiff's attorney sent a letter to American complaining that American had interfered with the plaintiff's performance of her duties, asserting, *inter alia,* that the interference was motivated by her sex and national origin, and alleging that it violated American's policies and procedures. During late February and early March 1990, the parties discussed how to resolve their dispute. On March 9, 1990, the plaintiff was fired, allegedly for poor performance. Following the plaintiff's discharge, Alvin Griggs was hired as American's Human Resources Director.

Thereafter, the plaintiff filed this lawsuit. American asserts that while the action was pending it learned that: (1) the plaintiff did not have a college degree; and (2) during January and February 1990, while still employed by American, the plaintiff had taken either copies or the originals of nearly three thousand pages of American's confidential personnel files and turned them over to her attorney.[1] Defendants argue that this subsequently discovered information entitles them to summary judgment under the *Summers* doctrine.

### II. *Summary Judgment Standard.*

 Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported

---

1. American contends that it first became aware of the plaintiff's conduct with regard to its personnel records when, during the course of discovery, American served a set of discovery requests on the plaintiff. Her response was to produce documents from American's own confidential personnel records. Those documents included salary records, personnel files, performance appraisals of several director-level managers, studies of American by independent consultants, and other similar documents. Plaintiff asserts that she presented those documents to her counsel to assist in evaluating her claims that American was interfering with performance of her duties and illegally retaliating against her.

summary judgment motion may not rest upon the mere allegations of the complaint, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under the governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party. *Id.* Although a court should be cautious in granting summary judgment in discrimination cases where intent is at issue, such motions are useful to weed out those claims obviously lacking merit. *See Summers,* 864 F.2d at 709; *Guliford v. Beech Aircraft Corp.,* 768 F.Supp. 313, 315 (D.Kan.1991).

### III. *Title VII Claim.*

Plaintiff alleges that beginning in October 1988 the defendants discriminated against her on the basis of her sex and race. Bonger asserts that when she brought her concerns regarding discrimination to management she was retaliated against and ultimately discharged.

Defendants deny any racial or sexual discrimination or retaliation. Moreover, the defendants argue that even if there had been such discrimination or retaliation against the plaintiff, summary judgment in their favor would be required under the Tenth Circuit's decision in *Summers v. State Farm Mutual Automobile Ins. Co.,* 864 F.2d 700 (10th Cir.1988). Defendants argue that American would not have hired the plaintiff had she not misrepresented the fact that she had a college degree.[2] Defendants further contend that American would have terminated the plaintiff's employment had it learned that she had misrepresented her college education.

Finally, the defendants assert that American would have discharged the plaintiff had it known that she had taken either

copies or originals of nearly three thousand pages of American's confidential personnel files and turned them over to her attorney. Thus, even in the presence of racial and sexual discrimination or retaliation, the defendants argue, the plaintiff cannot recover because, under *Summers,* she was not injured.

In *Summers,* the plaintiff claimed age and religious discrimination in violation of Title VII and the Age Discrimination in Employment Act. Summers was placed on probation for two known falsifications of insurance documents. Thereafter Summers was discharged for poor work performance. Four years later, during litigation of his discharge, State Farm discovered 150 falsifications of company records made by Summers during his employment. State Farm argued that the 150 falsifications, unknown at the time of Summers' dismissal, should be considered in determining the remedy available to the plaintiff. Summers contended that such falsifications were irrelevant and inadmissable. *Id.* at 704.

The *Summers* court, however, determined that "while such after-acquired evidence cannot be said to have been a 'cause' for Summers' discharge in 1982, it is relevant to Summers' claim of 'injury,' and does itself preclude the grant of any present relief or remedy to Summers." *Id.* at 708. The court reasoned:

"The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a 'doctor.' In our view, the masquerading doctor would be entitled to no relief, and Summers is in no better position." *Id.*

■ To prevail under *Summers* an employer must show that it would have dis-

---

**2.** Plaintiff also stated under oath in her deposition that she had earned a degree in business administration from the University of Denver. In addition, when American filed a motion seeking to add certain defenses based upon its belief that the plaintiff had lied about her educational qualifications when she applied for the job at American, plaintiff's counsel filed a fraudulent

copy of a University of Denver transcript supplied by the plaintiff that falsely showed that she had graduated from that University. (There is no claim of any knowingly wrongful or unethical conduct by the plaintiff's attorneys, who apparently were also victimized by her falsification.)

charged the employee had it known of the misconduct before or at the time of termination. This requirement is intended to prevent an employer, after being charged with unlawful discrimination, from reviewing an employee's file to discover minor or technical infractions for use in a *Summers* defense. *See O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656, 659 (D.Utah 1990).

## A. *Resume Fraud.*

■ The first issue to be addressed is what is the proper standard where a discharged employee has been found to have engaged in resume fraud. Defendants argue that the plaintiff is not entitled to recover if either: (1) American would not have hired the plaintiff absent the resume fraud; or (2) American would have discharged the plaintiff had the misrepresentation been discovered during her employment.[3] Plaintiff asserts that she was hired and, therefore, the only proper inquiry is whether American would have discharged her.

No court has expressly addressed this issue. Some courts have utilized the standard advocated by the defendants. *See e.g., Washington v. Lake County, Ill.*, 762 F.Supp. 199 (N.D.Ill.1991); *Churchman v. Pinkerton's Inc.*, 756 F.Supp. 515 (D.Kan. 1991); *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991 (D.Kan.1989). Others have simply inquired whether the employer would have discharged the employee had the resume fraud been discovered during his or her employment. *See e.g., O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656 (D.Utah 1990).

Although the *Summers* court did not address this issue, the court's rationale sheds some light on the standard to be utilized. The *Summers* decision was based on the principle that the plaintiff suffered no injury because had State Farm known of the falsifications, it would have discharged Summers regardless of discrimination.

There are many situations, however, in which an employer would not discharge an employee if it subsequently discovered resume fraud, although the employee would not have been hired absent that resume fraud.[4] In such situations, the employee indeed would suffer injury if discharged because of discrimination.

Thus the instant defendants have the burden to show that American would have dismissed the plaintiff had it known of her resume fraud. American has submitted an affidavit stating that it would have discharged the plaintiff for misrepresenting that she had a college degree. (Mannion affidavit at ¶ 8). Furthermore, it is the policy of American that dishonesty in the application process is grounds for termination. (Mannion affidavit at ¶ 8 and Griggs affidavit at ¶ 7).

Plaintiff does not deny that she represented to American that she had a college degree. Rather, she asserts that American would not necessarily have discharged her if it had learned of her misrepresentation because: (1) she had twelve years experience as a human resources professional; (2) she had received uniformly positive performance evaluations during her eighteen months of employment; (3) she never falsified any records; and (4) a college degree was not a required qualification for the job.[5]

**3.** Defendants liken the instant case to the "masquerading doctor" hypothetical in *Summers.* In addressing that hypothetical, however, the court did not indicate whether the "doctor" was not entitled to relief because: (1) he would have been discharged; or (2) he would never have been hired without his misrepresentation.

**4.** For example, if the employee had been doing excellent work, if a great deal of resources had been invested in training the individual, if the fact misrepresented was not critical to the employee's job and if the circumstances surrounding the misrepresentation were especially understandable, an employee might not be dis-

charged for subsequently discovered resume fraud.

Whether an employee would ever have been hired, however, is a factor that many employers would probably consider in determining whether to discharge that employee in the face of discovered resume fraud.

**5.** This argument is based on the job description prepared by American for the Human Resources Director position. That job description mandates only seven years experience. No mention is made of a college degree. (Deposition exhibit 46).

Plaintiff further argues that her discharge was inconsistent with American's treatment of its

Although there was no question in *Summers* that State Farm would have discharged Summers had it known of his misconduct, the question is closer here. However, no inferences can be drawn from any evidence presented by the plaintiff to cast doubt on the declaration that American would have discharged the plaintiff had the resume fraud been discovered during her employment. It is a long standing policy at American that such conduct is grounds for termination. The uncontroverted evidence of record establishes that American would have terminated the plaintiff's employment after discovering her resume fraud.

### B. *The Personnel Files.*

■ Moreover, the defendants have supplied an affidavit stating that American would have discharged the plaintiff for copying and delivering to her attorney the confidential personnel records. (Mannion affidavit at ¶ 7).[6] Indeed, the only two other American employees who had been caught copying documents from American files without authorization and delivering those copies to others outside of American were discharged. (Griggs affidavit at ¶ 6).

Although the affidavits submitted by American are undoubtedly self-serving, there is no evidence to rebut the declaration that American would have terminated the plaintiff's employment had her actions been discovered.[7] Discharging an employee for such conduct is consistent with American's declared policies and with the treatment accorded its former employees who had engaged in similar conduct.

Moreover, it is reasonable that an employer in American's position would discharge its Human Resources Director, a person in a management position responsible for sensitive personnel issues, if that employee engaged in unauthorized copying and distribution of confidential personnel files.

### C. *Conclusion.*

It appears that the instant case falls squarely within *Summers* and, therefore, a grant of relief to the plaintiff is precluded. Although this result unquestionably is harsh, it is required by Tenth Circuit precedent binding on this court. Accordingly, I conclude that no genuine issues of material fact exist and the defendants are entitled to judgment as a matter of law as to the plaintiff's Title VII claim.

### IV. *State Law Claims.*

■ Defendants argue that the plaintiff's pendent state law claims should be dismissed under the rationale of *Summers* as well. Defendants, however, have cited no Colorado authority, and I can find none, discussing whether the state courts would follow *Summers*. A federal court that has dismissed all claims over which it has original jurisdiction, may decline to exercise pendent jurisdiction over the remaining state law claims. 28 U.S.C. § 1367.

Here there is no compelling reason to retain federal jurisdiction over the plaintiff's remaining state law claims. *See Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir.1990). Rather, considerations of comity lead to the conclusion that the Colorado courts should

---

current Human Resources Director, Alvin Griggs. Plaintiff argues that Griggs testified falsely in his deposition when he stated that he had never been discharged from a job. Assuming that this was true, there is no evidence in the record that Griggs ever misrepresented to American the circumstances of his prior employment.

6. Plaintiff's conduct with regard to American's personnel records did not occur until January and February 1990. Employee misconduct, however, only has an effect on that person's ability to recover for discrimination that occurs subsequent to that employee's wrongdoing. Thus, the plaintiff's conduct with regard to the personnel records is relevant to her ability to

recover on her claim that she was discharged in violation of Title VII.

7. The parties disagree on whether American knew that the plaintiff had the files or that she had given them to her attorney at the time of her discharge. This fact is significant, however, because if American did know that the plaintiff had these records and had shown them to her attorney, then American's omission of that fact from the discharge letter would indicate that the defendants are now engaging in a post hoc rationalization for their conduct. Plaintiff, however, offers no evidence to rebut Mannion's declaration that he would have discharged the plaintiff had he known of her conduct with regard to the records.

decide whether the plaintiff's state law claims are barred under the rationale of *Summers.* Therefore, I decline to exercise jurisdiction over the plaintiff's state law claims.

Accordingly, IT IS ORDERED that:

(1) Defendants' motion for summary judgment is granted as to the plaintiff's Title VII claim; and

(2) Plaintiff's remaining state law claims are dismissed without prejudice.