**R.C. JORDAN, Appellant,**

v.

**JOHNSON CONTROLS, INC., Appellee.**

No. 05–93–00132–CV.

Court of Appeals of Texas, Dallas.

Feb. 23, 1994.

Appellant's Motion for Rehearing Overruled April 11, 1994.

Dale B. Tillery, Dallas, for appellant.

Jonathan C. Wilson, Craig A. McDougal, John DeSteguer, and Dean J. Schaner, Dallas, for appellee.

Before NYE,[1] C.J., and ASHWORTH[2] and WHITHAM,[3] JJ.

1. The Honorable Paul W. Nye, Chief Justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi, Retired, sitting by assignment.

2. The Honorable Clyde R. Ashworth, Justice, Court of Appeals, Second District of Texas at Fort Worth, Retired, sitting by assignment.

## OPINION

WARREN WHITHAM, Justice (Retired).

In this wrongful discharge case brought under the Texas Workers' Compensation Act, TEX.REV.CIV.STAT.ANN. art. 8307c (Vernon Supp.1993), the employer-appellee, Johnson Controls, Inc., moved for summary judgment against the employee-appellant, R.C. Jordan, on the ground that, as a matter of law, the after-acquired evidence doctrine bars Jordan's 8307c claim and precludes Jordan from recovery. The trial court granted Johnson Controls' amended motion for summary judgment and dismissed Jordan's claims with prejudice. This appeal presents three issues: first and primary, whether the after-acquired evidence doctrine bars Jordan's 8307c claim; second, whether the after-acquired evidence doctrine is a function of state law and not preempted; and third, whether the trial court erred in considering a summary judgment affidavit. We conclude that: (1) the after-acquired evidence doctrine bars Jordan's 8307c claim; (2) the after-acquired evidence doctrine is a function of state law and is not preempted in the present case; and (3) the trial court properly considered the challenged summary judgment affidavit. Accordingly, we affirm.

### The Undisputed Summary Judgment Evidence

Before Johnson Controls hired Jordan, Jordan completed an employment application on which Jordan verified that he had "never been convicted of a felony or other serious crime." Jordan placed his signature on the application directly under the following provision:

I certify this application for employment is complete and accurate to the best of my knowledge and understand that any misstatement or omission of material fact will be sufficient cause for discharge.

3. The Honorable Warren Whitham, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

Two years later, Jordan was terminated due to repeated violations of Johnson Controls' attendance policy. At the time of Jordan's termination, Johnson Controls did not know of Jordan's fraudulent employment application. After Jordan filed suit for wrongful termination, Johnson Controls learned that, before Jordan was hired, Jordan was convicted of armed robbery and served time in the state penitentiary. Jordan admitted (1) his past criminal record, (2) that he lied on his employment application at Johnson Controls, and (3) that lying on the application constituted grounds for immediate termination. Johnson Controls' company rules specify that falsification of the employment application is grounds for immediate termination. Jordan acknowledged that he received a copy of Johnson Controls' company rules. Johnson Controls would not have hired Jordan had Jordan's falsified application been discovered prior to Jordan receiving an offer of employment or if Jordan had disclosed that he had been convicted of a serious crime such as armed robbery. Johnson Controls would have terminated Jordan when it learned of his falsification. Another employee was promptly terminated by Johnson Controls as soon as Johnson Controls discovered that the employee failed to disclose a prior criminal conviction on his application. Therefore, it is undisputed that (1) Jordan lied on his employment application; (2) Johnson Controls would not have hired Jordan had it known of his falsified application or armed robbery conviction; and (3) Johnson Controls would have terminated him immediately upon discovering that he lied on his application.

### The Issues

Jordan's first and second points of error, present the principal issue before us: whether an employee may recover in an 8307c wrongful discharge action when, after discharge, the employer discovers that the employee gained his job through fraud and deceit by lying on his job application regarding a previous criminal conviction and incarceration for armed robbery. Thus, we reach the question whether the after-acquired evidence doctrine *bars* the employee's claim where the employer either (1) would not have hired the employee, or (2) would have fired the em-

ployee had the employer discovered the dishonesty or the criminal record. Jordan's third and fourth points of error raise the issue of whether application of the after-acquired evidence doctrine is a function of state law and is not preempted by the National Labor Relations Act or a collective bargaining agreement. Hence, we reach the question whether the after-acquired evidence doctrine is a function of state law and is not preempted in the present case. Jordan's fifth and final point of error complains of a summary judgment affidavit. Therefore, we reach the question whether the trial court erred in considering the affidavit.

In light of certain arguments made by Jordan, we emphasize the role played by the after-acquired evidence doctrine in the present case. The doctrine is not urged by Johnson Controls to *justify* an alleged unlawful termination of employment. Rather, the doctrine is urged to *preclude* the former employee from maintaining and recovering on his 8307c claim. Indeed, in spite of his various arguments, we conclude that Jordan must know that the doctrine is not invoked in this appeal to justify termination or discharge. We reach this conclusion because Jordan's brief tells us: "[i]n fact, it is undisputed and both parties agree, that Mr. Jordan *was not* terminated or discharged because he allegedly 'falsified his employment application'."

### The After–Acquired Evidence Bar To Recovery

With facts and issues before us, we turn to consider whether the after-acquired evidence doctrine bars the employee's claim where the employer either would not have hired the employee or would have fired the employee had it discovered the dishonesty or the criminal record.

In his first point of error, Jordan contends that the trial court erred in granting Johnson Controls' amended motion for summary judgment because in Texas when an employer assigns grounds for discharging an employee an employer cannot later justify the termination on grounds that were not made the basis of the employee's termination at the time of the discharge, citing *Measday v.*

*Kwik–Kopy Corp.*, 713 F.2d 118, 125–26 (5th Cir.1983). We conclude that Jordan's reliance upon this rule is misplaced. We reach this conclusion because Jordan treats Johnson Controls' reliance upon the after-acquired evidence doctrine as the assertion that Jordan was discharged because he falsified his employment application. Thus, Jordan argues that there is no summary judgment evidence establishing that Jordan was terminated or discharged because he "falsified his employment application." We conclude, however, that Jordan's premise misses the mark as to application of the after-acquired evidence doctrine sought to be made by Johnson Controls. In the present case, Johnson Controls concedes that Jordan was terminated for violation, by Jordan, of Johnson Controls' attendance policy. Johnson Controls does not seek to later justify Jordan's termination on other grounds. Rather, Johnson Controls advances the after-acquired evidence doctrine as precluding former-employee Jordan from maintaining and recovering on his 8307c claim. Hence, we reach a line of cases which Jordan refuses to consider.

Where the employee brings a suit for discriminatory discharge, the after-acquired evidence doctrine bars recovery in a wrongful discharge claim brought by an employee who falsified his employment application even if the falsification was not discovered by the employer until after the discharge. *See Summers v. State Farm Mutual Auto Ins. Co.*, 864 F.2d 700, 708 (10th Cir.1988); *Johnson v. Honeywell Info. Sys., Inc.*, 955 F.2d 409, 415 (6th Cir.1992); *Milligan–Jensen v. Michigan Technological Univ.*, 975 F.2d 302, 304–05 (6th Cir.1992). While after-acquired evidence cannot be said to have been a "cause" for discharge, it is relevant to a claim of "injury," and does itself preclude the grant of any present relief or remedy to the claimant. *See Summers*, 864 F.2d at 708. In the present case, Johnson Controls advances the doctrine of after-acquired evidence to preclude Jordan's claims and entitlement to relief. Johnson Controls does not maintain that the doctrine of after-acquired evidence, or the actual after-acquired evidence, constitutes grounds for Jordan's discharge. Indeed, as noted above, Jordan concedes that

both parties agree Jordan *"was not* terminated or discharged because he allegedly 'falsified his employment application'." It follows that the trial court did not err in granting Johnson Controls' amended motion for summary judgment and in barring Jordan's 8307c claim for reasons argued in Jordan's first point of error. We overrule Jordan's first point of error.

In his second point of error, Jordan contends that the trial court erred in granting Johnson Controls' amended motion for summary judgment and in creating or recognizing a complete bar to Jordan's 8307c wrongful discharge claim. Jordan supports his contention with two arguments. First, Jordan asserts that the Texas Legislature did not provide for an exception to, or for a complete bar to, an employee's Article 8307c wrongful discharge claim based upon an alleged falsification of an employment application. Second, Jordan maintains that no opinion of the Texas Supreme Court or an appellate court of Texas has judicially recognized such a bar. Johnson Controls concedes that the after-acquired evidence doctrine has not been adopted legislatively or judicially in this State and notes that this is a case of first impression in the Texas state courts.

First, we address the legislature's failure to provide for an after-acquired evidence defense in 8307c actions. We conclude that one of our sister courts of appeals has provided the answer to the inquiry contrary to Jordan's assertion that the legislature failed to speak. *See Swanson v. American Mfg. Co.*, 511 S.W.2d 561 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). *Swanson* teaches that in an action based upon Article 8307c, where the undisputed facts established the employer's right to discharge the employee for cause in that he had breached his contract of employment by deliberate falsification of his application for employment, and because the discharge occurred for the false statements contained in the application for employment, and not because of compensation claims filed by him, then a 8307c claimant may not recover. *See Swanson*, 511 S.W.2d at 565. Thus, in a 8307c case, false statements in an employment application could form the basis for dismissal of the

dishonest employee. *See Swanson*, 511 S.W.2d at 564. The *Swanson* court explained its reasoning for this holding in a 8307c case:

> Were the court to adopt the reasoning and position assumed by the employee in this case and on this appeal it would not only encourage but would serve as an incentive to every person seeking employment to falsify his application, to deceive and mislead the prospective employer in every possible way in order to gain employment. Such a result was never intended by the Legislature when it enacted 8307c.

*Swanson*, 511 S.W.2d at 565. Applying the rational of *Swanson*, we conclude that it is immaterial to disposition of the present case that the Texas Legislature did not provide for a complete bar to an employee's 8307c wrongful discharge claim based upon falsification of an employment application. We reason that if, as in *Swanson*, false statements in an employment application can form the basis for dismissal of the dishonest employee in an 8307c action without legislative provision, then in the present case, false statements in an employment application can form the basis for barring recovery under an after-acquired evidence doctrine defense in an 8307c action without legislative provision. Moreover, we decline to hold that the legislature must anticipate and provide for each and every circumstance that might bar recovery or relief under a given statute.

Next, we consider Jordan's argument that the trial court erred because there is no opinion of the Texas Supreme Court or of an appellate court of Texas which has judicially recognized the after-acquired evidence bar to Jordan's 8307c wrongful discharge claim. This Court is some Texas authority and for the reasons that follow we recognize the after-acquired evidence bar to Jordan's claim.

In Texas, a federal district court has applied the after-acquired evidence doctrine in a case of discriminatory discharge. *See Redd v. Fisher Controls*, 814 F.Supp. 547 (W.D.Tex.1992). We will not extend this opinion seeking to improve on *Redd*'s discussion of the application of the after-acquired evidence doctrine in a case of discriminatory discharge. Instead, we quote and adopt *Redd*'s language:

> [M]ost courts addressing this issue have held that such evidence can be cause for granting summary judgment in favor of an employer/defendant on the grounds that the employee/plaintiff could not have been injured by being discharged, even if he or she was actually discharged for otherwise illegal reasons. *See, e.g., Milligan–Jensen v. Michigan Tech. Univ.*, 975 F.2d 302, 304–05 (6th Cir.1992); *Washington v. Lake County, Ill.*, 969 F.2d 250, 256 (7th Cir. 1992); *Johnson v. Honeywell Info. Sys., Inc.*, 955 F.2d 409, 415 (6th Cir.1992); *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir.1988); *McKennon v. Nashville Banner Publishing Co.*, 797 F.Supp. 604, 608 (M.D.Tenn. 1992); *Bonger v. American Water Works*, 789 F.Supp. 1102, 1105–07 (D.Colo.1992); *Churchman v. Pinkerton's Inc.*, 756 F.Supp. 515, 520–21 (D.Kan.1991); *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991, 994–95 (D.Kan.1989); *but see Wallace v. Dunn Constr. Co., Inc.*, 968 F.2d 1174, 1178 (11th Cir.1992) (Court rejects Summers approach).

The first, and perhaps leading, case to discuss this issue was *Summers v. State Farm Mutual Automobile Insurance Company*, decided by the Tenth Circuit Court of Appeals in 1988. *Summers*, 864 F.2d 700. In *Summers*, a discharged employee, Summers, brought a suit complaining of discrimination on the basis of age and religion. While preparing for trial, his employer State Farm, which was already aware of several instances of falsified records by Summers and had placed Summers on probation, discovered over 150 instances where Summers had falsified records, 18 of those taking place while Summers was on probation. *Id.* at 702–03. As a result of that information, discovered after Summers had been discharged, State Farm argued that because it would have terminated Summers had it known of all of those instances, Summers should not, as a matter of law, be entitled to any relief,

whether or not he had been terminated on account of his age or religion. *Id.* at 704

\* \* \* \* \* \*

The majority of courts which have applied the holding in Summers have done so in cases, like this, where an employee brings a claim of discriminatory discharge and the employer discovers after the discharge that the employee had made material misstatements or omissions on his or her job application, which, if known by the employer, would have caused the employer to not hire or to discharge the employee. *See Milligan–Jensen,* 975 F.2d at 303–05 (employee omitted prior DUI conviction on employment application for position as public security officer); *Reed v. AMAX Coal Co.,* 971 F.2d 1295, 1298 (7th Cir. 1992) (employee denied being convicted of a felony on job application when employee had been convicted of armed robbery two years earlier); *Washington,* 969 F.2d at 252, (employee stated on job application he had never been convicted of an offense when he had been convicted of third-degree assault and criminal trespass); *Johnson,* 955 F.2d at 411, 414 (employee stated she had college degree on a job application for a position which expressly required a college degree when, in fact, she had completed only four courses); *Bonger,* 789 F.Supp. at 1104, 1106 (same); *Churchman,* 756 F.Supp. at 521 (employee made several material misstatements and omissions on job application); *Mathis,* 719 F.Supp. at 993–94 (employee omitted fact she had prior felony conviction and fact she had been terminated for cause by previous employers on job application). Moreover, the plaintiffs in many of those cases were precluded from any recovery because it was discovered they had lied on their job applications about prior convictions. *See id.* *Redd,* 814 F.Supp. at 551–52.

Because *Redd* notes a case said to reject the *Summers* approach, we turn to consider the case noted. Neither party cites *Wallace v. Dunn Constr. Co. Inc.,* 968 F.2d 1174 (11th Cir.1992). In any event, we cannot say that *Wallace* rejects the *Summers* approach entirely. Even the majority in *Wallace* conceded that: "[w]e agree with the abstract proposition, espoused by the *Summers* court, that after-acquired evidence is relevant to the relief due a successful Title VII plaintiff under 42 U.S.C.A. § 2000e–5(g) (1981)." *Wallace,* 968 F.2d at 1181. But now let us consider how the majority in *Wallace* applied the "proposition" to the "relief due." *Wallace* applied *Summers* so as to deny the prospective remedies of reinstatement, front pay and injunctive relief to all of the plaintiff's claims. *See Wallace,* 968 F.2d at 1184. Hence, we must identify the relief to which the *Wallace* majority refused to apply the *Summers* approach. We know that to be relief sought for backpay and lost wages. Indeed, it was only as to whether the after-acquired evidence doctrine mandates an early end to any period of backpay, lost wages and liquidated damages under the involved federal statutes that the majority in *Wallace* rejected the *Summers* approach. *See Wallace,* 968 F.2d at 1184. The majority in *Wallace* arrived at its "separation of relief sought" stance by its "lapse of time between the employment decision to discharge and discovery" reasoning. The majority in *Wallace* reasoned that the employee would have remained employed for at least some period of time after he was actually discharged. *See Wallace,* 968 F.2d at 1179–80. We decline to adopt *Wallace's* "lapse of time" modification of the *Summers* approach. Instead, we follow the majority line of cases represented by *Summers* and its progeny and deny recovery to the full extent of the relief sought. We conclude that the employee's act of falsifying his employment application as to criminal offenses committed is too serious a matter as to permit a "lapse of time" window of partial recovery. Indeed, we refuse to reward the deceitful employee for the period in which he escaped detection after his discharge.

In the present case (1) the printed terms of the falsified application submitted by Jordan clearly state that misstatements or omissions will be sufficient cause for discharge; (2) company rules received by Jordan specify that falsification of the employment application is grounds for immediate discharge; (3) Jordan admitted that he lied on his employment application and that such action consti-

tuted grounds for immediate termination; and (4) the undisputed summary judgment evidence shows that Jordan would not have been hired had his falsified application been known and that he would have been immediately terminated had it been discovered during his employment.

 We adopt the after-acquired evidence doctrine in Texas. We hold that the after-acquired evidence doctrine bars an employee's 8307c claim where the employer either would not have hired the employee or would have fired the employee had the employer discovered the dishonesty or the criminal record. It follows that Jordan's employment having been obtained by fraudulent means, and applying the after-acquired evidence doctrine, we must conclude that Jordan's fraudulent activity bars his wrongful discharge suit under 8307c and precludes him from any recovery under 8307c.

Having rejected both prongs of Jordan's second point of error, we conclude that the trial court did not err in granting Johnson Controls' amended motion for summary judgment and in creating or recognizing a complete bar to Jordan's 8307c wrongful discharge claim. We overrule Jordan's second point of error. In applying the after-acquired evidence doctrine in the present case, we express no opinion as to the application of the after-acquired evidence doctrine to any other type or manner of claim or cause of action. Certainly, it has long been the rule in this state that misrepresentations in an application for employment do not preclude recovery for injuries under the Workers' Compensation Act. *See Huffman v. Southern Underwriters,* 133 Tex. 354, 361, 128 S.W.2d 4, 7 (1939). Here we apply the after-acquired evidence doctrine to a 8307c claim only.

### The Preempted Question

 In his jointly briefed and argued third and forth points of error, Jordan contends that the trial court erred in granting Johnson Controls' amended motion for summary judgment because Johnson Controls' claim that falsification of the employment application "constitutes just cause" for Jordan's discharge is (1) preempted by the National La-

bor Relations Act and (2) subject to an arbitration procedure contained in a labor collective bargaining agreement and Johnson Controls has failed to submit its claim to the contractual grievance procedure. Following so stating his third and forth points of error, Jordan refines those two points as follows. We quote:

> [t]he trial court erred in granting Johnson Controls' Amended Motion for Summary Judgment because Johnson Controls' claim that the falsification of an employment application "constitutes just cause" for Mr. Jordan's discharge is preempted by the National Labor Relations Act and the resolution of such issue is irrelevant to an Article 8307c claim.

Thus, we read Jordan to contend that the after-acquired evidence doctrine is somehow preempted by Section 301 of the National Labor Relations Act, 29 U.S.C. § 185(a), because a collective bargaining agreement exists between Johnson Controls and the union at the plant where Jordan was employed.

We will not extend this opinion by a discussion of Section 301 preemption. Instead, we will let Jordan's own words provide the basis of our disposition of his third and forth points of error. We quote from Jordan's letter brief to the trial court filed in response to Johnson Controls' argument in support of its amended motion for summary judgment:

> Defendant's late found theory of employment application falsification is pre-empted if Defendant is claiming it as the reason Plaintiff was terminated. If Defendant continues to assert the falsification theory *was not* one of the reasons Plaintiff was fired then it is not pre-empted and it is simply irrelevant. If Defendant did not and has not at this time terminated Plaintiff for an alleged falsification of his employment application then there is nothing to grieve and it is not pre-empted; however, if Defendant claims Defendant has or is terminating Plaintiff for alleged employment application falsification then such claim is pre-empted by the collective bargaining agreement.

Clearly, the answer to the first sentence of Jordan's response is that Johnson Controls is

not claiming employment application fraud as the reason Jordan was terminated. Rather, Johnson Controls claims on appeal that "under the after-acquired evidence doctrine, the reason for termination is immaterial because Jordan's falsification of his application bars his suit and precludes any relief for wrongful termination," citing among authorities, *Milligan–Jensen*, 975 F.2d at 305; and *Summers*, 864 F.2d at 708. Indeed, Jordan himself tells us in his brief that: "[i]n fact, it is undisputed and both parties agree, that Mr. Jordan *was not* terminated or discharged because he allegedly 'falsified his employment application.'" Looking then to the remainder of Jordan's above quoted response made to the trial court, we know that application of the after-acquired evidence doctrine in the present case is not preempted by Section 301 of the National Labor Relations Act.

In the absence of preemption under Section 301 of the National Labor Relations Act, we conclude that the trial court did not err in granting Johnson Controls' amended motion for summary judgment as complained of in Jordan's third point of error. Furthermore, in light of Jordan's admission that he was not terminated or discharged for falsifying his employment application, there is no "discharge" as referred to in Jordan's forth point of error. In the absence of that asserted "discharge," we conclude that the trial court did not err in granting Johnson Controls' amended motion for summary judgment as complained of in Jordan's fourth point of error. It follows that application of the after-acquired evidence doctrine in the present case is a function of state law and is not preempted by the National Labor Relations Act or a collective bargaining agreement. We overrule Jordan's third and fourth points of error.

### The Challenged Summary Judgment Affidavit

In his fifth point of error, Jordan contends that the trial court erred in granting Johnson Controls' amended motion for summary judgment for the reason that the trial court's summary judgment was based upon an affidavit of an interested witness which is not clear, positive and direct, and otherwise credible and free from contradic-

tions and inconsistencies, and such affidavit could not have been readily controverted by Jordan. Jordan complains of the affidavit of Don Wilson. Wilson was personnel manager for Johnson Controls at the time of Jordan's discharge. Wilson's statement in the challenged affidavit: "I retired in 1992 and am no longer employed by the Company" remains undisputed. Indeed, the record fails to show any claim of bias on Wilson's part or benefit to Wilson of any nature from the outcome of this case. Moreover, the record fails to show either claim or fact that Wilson had an interest, pecuniary or otherwise, in the outcome of the lawsuit or is a party, or relative, or employee of a party to the lawsuit. Hence, we conclude that at the time Wilson made his affidavit, he was not an interested witness. Former employees are not interested witnesses. *See Aztec Corp. v. Tubular Steel, Inc.*, 758 S.W.2d 793, 800 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Querner v. George*, 336 S.W.2d 903, 904–05 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.). We conclude that the trial court's summary judgment was not based upon an affidavit of an interested witness. Therefore, the trial court did not err in granting Johnson Controls' amended motion for summary judgment for the reasons asserted in Jordan's fifth point of error. We overrule Jordan's fifth point of error.

The "interested witness" question aside, Jordan suggests that the affidavit of Roy Hernandez, union representative, controverts Wilson's affidavit. Specifically, Jordan maintains that Hernandez controverted Wilson's affidavit assertion that Johnson Controls would have discharged Jordan had Johnson Controls been aware of the employment application falsification. Jordan insists that Hernandez's affidavit opinion establishes that termination for falsification of an employment application would be without just cause under (1) the collective bargaining agreement, and (2) the prevailing federal labor law and arbitration decisions and that, therefore, Jordan would have been entitled to reinstatement and back-pay *if Johnson Controls had discharged Jordan for falsifying his employment application.* We are at a loss to understand how a genuine material fact issue can

be grounded at this point in this appeal upon a "discharge" fact issue when earlier in Jordan's brief he tells us: "[i]n fact, it is undisputed and both parties agree, that Mr. Jordan *was not* terminated or discharged because he allegedly 'falsified his employment application.'" Therefore, we conclude that Jordan's hypothetical "controverted affidavit" argument advanced under Jordan's fifth point of error affords no basis for us to say that the trial court erred in considering Wilson's affidavit and in granting Johnson Controls' amended motion for summary judgment. Again, we overrule Jordan's fifth point of error.

Affirmed.

McGARRY, C.J., and CHAPMAN, J., dissent with opinions.

McGARRY, Chief Justice, dissenting.

I respectfully dissent from the Court's decision not to reconsider the panel's opinion en banc. *See O'Connor v. First Court of Appeals,* 837 S.W.2d 94, 97 (Tex.1992). The panel opinion is contrary to well-established Texas law, and the summary judgment should be reversed.

By allowing the panel opinion to stand, the Court today has created the first ever affirmative defense to actions brought under article 8307c. TEX.REV.CIV.STAT.ANN. art. 8307c (Vernon Supp.1993). It is a defense that appears nowhere in the statute or the common law of Texas, but has been created whole cloth from federal decisions interpreting an unrelated federal statute and which are of questionable jurisprudential pedigree.

## THE AFTER–ACQUIRED EVIDENCE DEFENSE IS INCONSISTENT WITH THE ESTABLISHED LAW OF RETALIATORY DISCHARGE

The purpose of article 8307c is to protect persons who are entitled to benefits under the Workers' Compensation Act and to prevent them from being discharged by reason of taking steps to collect such benefits. *Carnation Co. v. Borner,* 610 S.W.2d 450, 453 (Tex.1980); *Mid–South Bottling Co. v. Cigainero,* 799 S.W.2d 385, 389 (Tex.App.—Texarkana 1990, writ denied). To further

this purpose, both Texas and federal courts have held that an injured worker need not prove that he was discharged *solely* because of his workers' compensation claim; even if other reasons for discharge exist, the worker may recover if retaliation is also a reason. *Jones v. Roadway Express Inc.,* 931 F.2d 1086, 1090 (5th Cir.1991); *Azar Nut Co. v. Caille,* 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Tex.1987); *Hunt v. VanDerHorst Corp.,* 711 S.W.2d 77, 79 (Tex.App.—Dallas 1986, no writ).

Thus, under the established law an employer could actually discharge an employee for lying on his employment application, yet still be liable under article 8307c if retaliation for a workers' compensation claim was an additional reason for the discharge. In contrast, the Court today creates an affirmative defense under which an employer could admit that the discharge was *solely* in retaliation for a workers' compensation claim, yet avoid liability merely by showing that it could have used the falsified application as an additional reason if it had known about it. This is in irreconcilable conflict with our Court's own prior holding in *Hunt,* and with the holding affirmed by the Texas Supreme Court in *Azar Nut.* If actually citing a falsified application as a cause for dismissal is not a defense, then neither is the subsequent discovery of a falsified application that "could have been" cited.

## THE DEFENSE IS BASED ON A FALSE PREMISE

The after-acquired evidence defense is also inconsistent with well-established Texas law in several other respects. The defense is premised on the view that the employee could not have been injured by the discharge, even if illegal, if the employee would not have been hired in the first instance because of a falsified application. *See, e.g., Redd v. Fisher Controls,* 814 F.Supp. 547, 551 (W.D.Tex. 1992). However, this premise is clearly improper because the presence or absence of injury must be determined by evidence, not assumed as a matter of law. If we cannot assume the absence of injury, then the premise underlying the after-acquired evidence defense must instead assume that the dis-

charge is not the *cause* of the employee's injury as a matter of law. Such an assumption, however, amounts to nothing more than an argument that the falsified application was the *sole* cause of the employee's injury. This reasoning ignores the well-established rule that an injury may have more than one proximate cause. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992); *see also Hunt,* 711 S.W.2d at 79 (there may be more than one cause for discharge). It also ignores the reality that the discharge may have been accomplished with extreme malice, entitling the terminated employee to recover damages for mental anguish and punitive damages. *See Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 660 (Tex.App.—El Paso 1989, writ denied); *Azar Nut,* 734 S.W.2d at 668–69.

Under such circumstances, Texas law would traditionally treat the employer's conduct as an intervening and superseding cause of the employee's mental anguish. Certainly, an employee who obtained employment through false pretenses could not foresee that he would be maliciously fired in retaliation for filing a workers' compensation claim. *See, e.g., Humble Oil & Ref. Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex.1968) (in deciding whether intervening force is a superseding cause, consider whether intervening force is a normal result of actor's negligence and whether intervening force brought about a different kind of harm that would have otherwise resulted from the actor's negligence); *see also Aerospatiale Helicopter Corp. v. Universal Health Servs.,* 778 S.W.2d 492, 497 (Tex.App.—Dallas 1989, writ denied), *cert. denied,* 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990) (a prior cause is not a basis for an action where it merely gives rise to the condition or occasion which makes the injury possible).

The injury and causation arguments implicit in the after-acquired evidence defense are further undermined by the Court's recognition that a falsified application cannot preclude recovery for injuries under the Workers' Compensation Act. *Huffman v. Southern Underwriters,* 133 Tex. 354, 361, 128 S.W.2d 4, 7 (1939). If the employee would not have been hired in the first instance because of a falsified application, then it stands to reason that the falsification is as much a cause of the injury that is the basis of the compensation claim as it is of the subsequent discharge. The after-acquired evidence defense cannot be applied to claims under article 8307c without ultimately affecting the employee's right to recover for injuries under the Workers' Compensation Act, because the primary purpose of article 8307c is to protect that right of recovery. *Carnation Co.,* 610 S.W.2d at 453. An employer who discovers a falsified application may effectively prevent an employee from filing a workers' compensation claim by freely threatening a retaliatory discharge.

## THE DEFENSE CANNOT BE PROVEN AS A MATTER OF LAW

The defense adopted today by the Court also raises the question of whether an employer may prove, as a matter of law, what it "would have done had it known" about the falsified application. In my view, an employer could not establish this element conclusively for purposes of summary judgment because it is inherently speculative. Even if an employer could show that it had refused to hire 100 consecutive applicants under a written policy of not hiring anyone who falsified an application, it would still require an inference to conclude that the employer would have treated the next applicant in the same fashion. Under Texas law, inferences may not be drawn in favor of the summary judgment movant. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In contrast, the summary judgment burden imposed in the federal courts would require the employee, as plaintiff, to affirmatively raise a fact issue on what the employer would have done. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–25, 106 S.Ct. 2548, 2551–54, 91 L.Ed.2d 265 (1986). A defense that would entitle an employer to summary judgment in federal court may not meet the standard for summary judgment under Texas law.

The inquiry into what an employer would have done if it had known about a falsified application may be further complicated by other factors, such as whether the falsifica-

tion was intentional or by mistake, whether the falsity was material, and whether the employer needed to hire someone immediately. In this case, the affidavit of Roy Hernandez clearly creates a fact issue as to whether Johnson Controls could have fired Jordan for his falsified application because the requirements of a collective bargaining agreement might have prevented the termination. At the same time, a jury should be entitled to disbelieve Don Wilson's subjective opinion as to what he "would have done" about hiring or firing Jordan. Whether Wilson would have been motivated to fire (or not to hire) Jordan under a hypothetical scenario is clearly not a question that should be resolved by summary judgment. *See Garcia v. John Hancock Variable Life Ins.*, 859 S.W.2d 427, 431 (Tex. App.—San Antonio 1993, no writ) (unlikely that issue of subjective intent could be established as a matter of law).

## IS AFTER–ACQUIRED EVIDENCE AN EQUITABLE DEFENSE?

The cases that have recognized the after-acquired evidence defense all involve a federal employment discrimination statute that expressly invokes the trial court's power to grant equitable relief, 42 U.S.C. § 2000e–5(g); *see, e.g., Summers v. State Farm Mut. Auto Ins. Co.*, 864 F.2d 700 (10th Cir.1988). Seen in this context, the after-acquired evidence defense resembles an application of the equitable doctrine of unclean hands, which creates an automatic bar to equitable claims. *Wynne v. Fischer*, 809 S.W.2d 264, 267 (Tex.App.—Dallas 1991, writ denied). The defense could perhaps be justified on this basis more than it could on the demonstrably false ground that the employee "could have no damages." However, such reasoning would make it singularly inapplicable to article 8307c, which does not invoke the trial court's broad equitable powers.

The after-acquired evidence defense should not be justified on equitable grounds because it has been criticized for being particularly inequitable. As one court has said:

> The *Summers* rule [the after-acquired evidence defense] does not encourage employers to eliminate discrimination. Rather, it invites employers to establish ludicrously low thresholds for "legitimate" termination and to devote fewer resources to preventing discrimination because *Summers* gives them the option to escape all liability by rummaging through an unlawfully-discharged employee's background for flaws and then manufacturing a "legitimate" reason for the discharge that fits the flaws in the employee's background. Even more troubling is the incentive to "sandbag." *Summers* encourages an employer with a proclivity for unlawful motives to hire a woman—despite knowledge of a legitimate reason that would normally cause the employer not to employ her—to destroy any evidence of such knowledge, to pay her less on the basis of her gender, to sexually harass her until she protests, to discharge her, and to "discover" the legitimate motive during the ensuing litigation, thus escaping any liability for the unlawful treatment of the erstwhile employee.

*Wallace v. Dunn Constr. Co.*, 968 F.2d 1174, 1180–81 (11th Cir.1992). Much of the same could be said for the defense's effect on workers' compensation claims. The defense will undermine the legislature's effort to eliminate retaliatory discharges and may actually encourage unlawful behavior by employers who know that a falsified application is their ace in the hole.

Finally, it must be noted that the equitable goals underlying this new defense may be adequately served under the present law. If a falsified application is proven to be the *sole* reason for discharge, then the employer is not liable under article 8307c. *Swanson v. American Mfg. Co.*, 511 S.W.2d 561 (Tex.Civ. App.—Fort Worth 1974, writ ref'd n.r.e.). If the falsified application is not the sole reason for discharge, or if it is discovered after discharge, it should still be admissible to reduce damages for lost future wages on the theory that the employee would have eventually been discharged for a proper reason. *See Wallace*, 968 F.2d at 1181–84. If the falsified application caused the employer to incur damages by hiring an unqualified person, the employer could file a counterclaim for fraud. The damages in such a counterclaim might be enough to more than offset the employee's claim under article 8307c. On

the other hand, the falsified application may have caused the employer no harm because, for example, the employee may have a record of superior performance. Simply stated, it should be left to the jury to decide which party has suffered the greater harm, and this Court should not dictate by fiat that the employee "could have no damages" when the evidence might suggest otherwise.

ROSENBERG, J., joins the dissent.

CHAPMAN, Justice, dissenting.

Although I did not serve on the panel in this case, I respectfully dissent. *See O'Connor v. First Court of Appeals,* 837 S.W.2d 94 (Tex.1992).

### Public Policy

I agree with Chief Justice McGarry in his conclusion that the panel opinion is erroneous because it creates an affirmative defense unrecognized in Texas Law until this time: the after-acquired evidence defense. *See Jordan v. Johnson Controls, Inc.,* 881 S.W.2d at 371 (McGarry, C.J., dissenting). I would hold that this defense is against public policy because it allows workers to be fired in retaliation for filing a workers' compensation claim. I do not agree that *even if it is taken as true that if an employer fires an employee in retaliation for filing a workers' compensation claim,* the employee should be barred from recovering if the employer performs a post-termination investigation and finds that the employee failed to reveal the existence of an older criminal conviction.

Johnson Controls contends that it should be allowed to fire Jordan without further explanation because it allegedly never would have hired him due to his conviction. However, the fact of the matter is that it did hire

Jordan. It could have investigated him to discover prior convictions, but, for whatever reason, it hired him. He then worked for Johnson Controls for two years. I would hold that Jordan was entitled to the protections against retaliatory firing afforded by the Texas Workers' Compensation Act.[1] If this State must adopt the policy set forth in the majority opinion, it should limit it so that the bar to recovery applies only to those who fail to disclose (1) felonies less than ten years old, or (2) multiple felony convictions.

### Summary Judgment Burden

I further agree with Chief Justice McGarry that, even if this were an equitable or fair defense, Johnson Controls has not met its summary judgment burden to show that it was entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a. Johnson Controls moved for summary judgment on the ground that the after-acquired evidence doctrine bars[2] Johnson's 8307c retaliatory-firing claim: Jordan cannot recover even if Johnson Controls fired him in retaliation for the good faith filing of a workers' compensation claim because he obtained his employment by hiding the fact that he had been convicted of a felony.

Johnson Controls moved for summary judgment on the basis of the after-acquired evidence defense and alleged that Jordan is barred from recovery because (1) Jordan materially falsified his employment application regarding a criminal conviction and (2) if it had known about it, it never would have hired him, or would have fired him. The dissent notes that and the panel opinion discusses whether an issue of material fact existed regarding whether Jordan "could have been fired." I agree with Justice McGarry's dissent that there is a fact issue regarding whether Jordan could have been fired. I

---

1. The panel opinion states that Johnson Controls claims it fired Jordan because of excessive absences. It also emphasizes that it does not matter why he was fired: the after-acquired evidence doctrine justifies any termination for any reason. However, inherent in Jordan's claim of retaliatory firing is the allegation that he was fired for filing a workers' compensation claim. Jordan never had the opportunity to present evidence to the jury that, perhaps, his absences were due to his injury.

2. The panel opinion states that it merely holds that Jordan's claim for retaliatory discharge is *barred* and that it does not hold that employers *may discharge* those who have filed workers' compensation claims if it is later discovered that the worker falsified his or her employment application. This is a distinction without a difference. The practical effect is the same.

also agree that Johnson Controls failed to establish as a matter of law that it *never would have hired* Jordan had it known of the falsification.

In support of its motion, Johnson Controls attached the affidavit of Don Wilson, the former personnel manager for Johnson Controls. He stated that Johnson Controls would never have hired Jordan had Jordan disclosed his 1972 conviction for armed robbery. I first agree that this issue involves the mental state or intent of Johnson Controls and is not a proper subject for summary judgment. As stated in *Garcia v. John Hancock*, cited in the dissenting opinion:

> In addition to this general cautionary approach to summary judgments, Texas courts have recognized that even greater care should be taken when considering summary judgment motions in select categories of litigation. As discussed in our original opinion, "summary judgment has rarely been viewed as appropriate when the issue is *inherently one for the jury or judge,* as in cases involving *intent,* reliance, uncertainty, unliquidated damages, and discretion." Timothy Patton, SUMMARY JUDGMENTS IN TEXAS, § 1.02 (1992); *see also El Paso Assocs., Ltd. v. J.R. Thurman & Co.,* 786 S.W.2d 17, 21 (Tex.App.— El Paso 1990, no writ); *Dan Lawson & Assocs. v. Miller,* 742 S.W.2d 528, 530 (Tex.App.—Fort Worth 1987, no writ).

*Garcia v. John Hancock Variable Life Ins. Co.,* 859 S.W.2d 427, 436 (Tex.App.—San Antonio 1993, no writ) (emphasis added). I believe the issue of whether Johnson Controls would have hired Jordan had it known of his 1972 conviction is an issue of fact for the jury. *See id.* This is because what Johnson Controls would have done is not something that is readily controvertible and is something to which only Johnson Controls can attest.[3] *See Garcia,* 859 S.W.2d at 436; *El Paso,* 786 S.W.2d at 21. I would hold that this is a fact issue regardless of whether

Wilson is an "interested witness." *See El Paso,* 786 S.W.2d at 21; *see generally* TEX. R.CIV.P. 166a(c); *Jordan,* at 370.

Additionally, even though Wilson stated that Jordan would not have been hired, the employment application states that "[c]onviction of a crime is not an automatic bar to employment—all circumstances will be considered." This is evidence that Johnson Controls does consider hiring individuals with criminal convictions. In his affidavit, Wilson states that another employee was terminated when it was discovered that he failed to reveal convictions for motor vehicle violations. Although this is evidence that employees are *fired* for falsifying employment applications, it does not establish that a person with a criminal record *would never be hired.* If Johnson Controls' application states that "all circumstances" regarding a criminal conviction would be considered, it is possible that a jury could find that Johnson Controls would consider such factors as the seriousness of the crime or the *age of the offense.* To the extent that Wilson's affidavit testimony can be controverted, and I do not agree that it easily can be, I believe this is some controverting evidence. All doubts as to the existence of a genuine issue of material fact are resolved in favor of the non-movant. *Roskey v. Texas Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex.1982). I do not agree that the burden shifted to Jordan to controvert something almost impossible to controvert, nor do I agree that Johnson Controls discharged its summary judgment burden.

---

3. To the extent that the panel opinion may have relied on federal summary judgment cases such as *Redd v. Fisher Controls,* 814 F.Supp. 547, 551 (W.D.Tex.1992), to support the notion that summary judgment is proper in cases where the question of whether the employer "would have hired" the employee is an issue, I note that those cases are inapplicable. Summary judgment practice in federal court places the burden on the non-movant to *avoid* summary judgment where the non-movant would have had the burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).